THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALBERT NICHOLS, Defendant-Appellant.

(No. 61485;

First District (5th Division)—September 12, 1975.

James J. Doherty, Public Defender, of Chicago (Saul H. Brauner, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

In a bench trial, defendant was found guilty of robbery and received a sentence of two to six years. On appeal, he contends that a difference between his actual height and that initially given of the offender by the complaining witness creates a reasonable doubt as to his guilt. The facts are essentially as follows:

On August 1, 1973, at about 6:30 p.m., the complainant, Riley Tindle, was on a CTA "L" platform awaiting a northbound "L" train. He had been sitting on a bench about six feet from the stairway for about five minutes when a man came on the platform and sat beside him. Tindle identified defendant as that person. They were the only persons on the platform at the time, and they engaged in a conversation about the train being late and slow. When Tindle got up from the bench to see if a train was coming, he was grabbed from behind and something sharp was put up against his neck. He was told not to move. His pockets were searched, and some $25 was taken. The offender then ran down the stairs.

On cross-examination, Tindle stated that it was still light outside when the incident occurred. Prior to the incident, he had seen defendant come up the stairs and walk to the bench. Tindle was unable to see the person who was behind him during the occurrence, and he only had a side view of the man's face when he ran down the stairs. Nevertheless, he stated that the man running down the steps was "definitely" the same man he had been talking to on the platform.

The CTA ticket agent from the station testified that he observed a man pay his fare, go up on the platform, and then run down within about a five-minute period. This was unusual, because no train had arrived or departed the station during the interim. He saw this person enter an automobile and noted the license number. Tindle then approached him

and said he had just been robbed. The agent called the police, and when the officers arrived he gave them a description of the automobile and its license number. Although he did not see the offender's face, he described him as being five feet eleven and wearing a yellow-gold shirt and brown-black pants.

Tindle admitted he had initially described the offender to the police as a black male, close to six feet tall, and might even have described him as six feet two inches. He wore a brownish-orange shirt, had a small mustache, and weighed between 160 and 170 pounds.

It was stipulated that if the reporting officers were called, they would testify that at the time they interviewed Tindle he described the offender as a male Negro, age 25 to 30, between six feet and six feet two, weighing between 140 and 150 pounds, short black hair, brown eyes and a dark brown complexion, and wearing an orange-yellow shirt and brown or black pants.

Chicago Police Officer Zaremba, the arresting officer, testified that on the date in question, at about 7:15 p.m. he received a radio flash describing the offender at the CTA robbery, together with a description of an automobile used by the offender and its license number. About 7:30 p.m. he stopped a vehicle bearing this license number and arrested both the driver and defendant, who was his passenger. A kitchen knife was found in the vehicle on the visor above the driver's seat.

Chicago Police Officer Ronald Knollmueller testified that on August 1, 1973, at about 9:25 p.m. he conducted a lineup in which Tindle identified defendant as the offender.

Defendant testified that he was arrested on August 1, 1973, after the car in which he was a passenger pulled out of a service station. He denied being in the car previous to that time and denied he was at the "L" station in question. He claimed he was in the car because he had asked to be driven to an address on North Throop Street, for which he paid the driver three dollars. He denied that there was a knife in the car and stated that he had been at the service station for about an hour prior to his entering the car. He further stated that he is about five feet seven or eight and that he is 31 years of age.

OPINION

Defendant urges that the difference in height between Tindle's initial description of defendant as being about six feet to six feet two inches, and the height stated by defendant of five feet seven or eight, raises a reasonable doubt as to his guilt.

The credibility of the witnesses and the weight to be given their

testimony are questions to be determined by the trier of facts. (*People v. Johnson*, 23 Ill.2d 465, 178 N.E.2d 878; *People v. Woodruff*, 9 Ill.2d 429, 137 N.E.2d 809.) Its decision will not ordinarily be disturbed on appeal. *People v. Donald*, 29 Ill.2d 283, 194 N.E.2d 227.

■■ Discrepancies, as well as any weaknesses in the manner in which an identification is made, only affect the credibility of the witnesses and the weight to be given to their testimony. (*People v. Tunstall*, 17 Ill.2d 160, 161 N.E.2d 300; *People v. Davis*, 70 Ill.App.2d 419, 218 N.E.2d 3.) Where, as here, there is a discrepancy between the complaining witness's estimate of defendant's height and his actual height, it is the task of the trier of facts to "evaluate the weight to be given to the discrepancies." *People v. Hartnett*, 49 Ill.App.2d 357, 363, 199 N.E.2d 671, 674.

■■ The significant issue here is not whether there is a discrepancy between the victim's estimate and the actual height, but whether, under the facts and circumstances of this case "an adequate opportunity for a definite identification" existed. (*People v. Marshall*, 74 Ill.App.2d 472, 476, 221 N.E.2d 128, 130.) Where the State has presented sufficient evidence as to defendant's identity, the question becomes one of credibility. *People v. Verrett*, 53 Ill.App.2d 18, 20, 202 N.E.2d 359, 360.

■■ In a bench trial, the determination of the trial judge as to credibility of witnesses and the weight to be given their testimony must be respected by a reviewing court, unless it "is contrary to the weight of the evidence, or is so unsatisfactory as to justify a reasonable doubt of defendant's guilt." *People v. Keagle*, 7 Ill.2d 408, 413, 131 N.E.2d 74, 77.

■■ Here, the discrepency in the victim's description of defendant's height and his actual height must be considered against the remaining evidence; namely, that the ticket agent took the license number of the automobile in which the offender escaped; that the automobile was found by the police within an hour after the incident occurred; that defendant was a passenger in the automobile; that the police found a butcher knife in the car; that Tindle identified defendant in a lineup about 3½ hours after the occurrence; and that Tindle had ample opportunity for a definite identification in that they were the only persons on the platform and he had seen defendant come up the stairs to the platform and then had sat and conversed with him for a period of time.

We are of the opinion, from our consideration of all the evidence, that the trial court's decision is not contrary to the weight of the evidence, nor is it so unsatisfactory as to justify a reasonable doubt as to defendant's guilt. See *Keagle*.

In view thereof, the judgment is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.