THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY GENE MAYS, Defendant-Appellant.

Third District   No. 74-423

Opinion filed May 14, 1976.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

David DeDoncker, State's Attorney, of Rock Island (James E. Hinterlong and Russell Boothe, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Terry Mays appeals from a conviction of uttering a forged instrument, following a jury trial, and he was sentenced as a result to serve a term of 2 to 6 years in the penitentiary (Ill. Rev. Stat. 1975, ch. 38, par. 17—3(a)(2)).

On appeal in this court defendant contends that the indictment was insufficient to charge the crime of forgery; that he was deprived of due process when the prosecution withheld information favorable to him; and that the evidence failed to prove, beyond a reasonable doubt that he was the person who passed the forged instrument.

From the record it appears that a check was drawn on the account of Jane Miller of East Moline in the amount of $55, payable to Eagle Discount Center. The check was presented at an Eagle Food Store in Moline by a young man at about 6 p.m. on May 28, 1974, purportedly signed by Jane Miller. When the cashier questioned the check, the young man told her that he was buying a case of Pepsi for his boss and that she had given him the check. The store's co-manager was called in and he asked to see some identification. The man produced a draft card bearing the name of Sammie Ralston and at the direction of the co-manager, the young man signed the check with that name as co-maker on the front and as an endorser on the back. Both of the store employees had several minutes to observe the man in good light and at close range.

Several days later the check was returned. Jane Miller contended she had not written the check nor authorized anyone else to write it. She subsequently told police that the check was one of a book of 25 checks which was missing. At the trial, Sammie Ralston appeared and testified that his wallet (including his draft card) was stolen sometime in May 1974. He testified that he did not sign the check and said that while the imitation of his signature on the back was fair, the one on the front of the check did not look like his writing at all.

A few days after the incident, police showed pictures of six or seven persons to the store employees. The cashier immediately identified a 6-year-old picture of the defendant, Mays, while the co-manager could not make an identification. Thereafter the police showed the two witnesses the same group of pictures and substituted a recent picture of defendant for the old one. This time both the cashier and the co-manager picked out the defendant's picture. The co-manager also later made identification again from a second set of photographs. In addition to the photographic identification, both witnesses positively identified the defendant at the trial. An FBI agent testified also that three fingerprints identified as those of defendant, were found on the back side of the check.

Jane Miller, on whose account the bad check was drawn, testified that

defendant was her boyfriend and was living with her at the time of the incident. She testified that Mays had been with her during the afternoon and evening of the day in question, although apparently between 4 and 8 p.m. he was in a neighboring apartment.

The principal argument made by defendant was that the evidence was insufficient to identify him as the person who passed the forged check. He points to discrepancies and contradictions in original descriptions given by the store employees as to his characteristics and to the suggestive nature of the photographic identification procedures. He also asserts that his alibi was not impeached.

■■ The general rule for evaluating the identification evidence and a conflicting alibi has been stated in *People v. McGee* (1961), 21 Ill. 2d 440, 444, 173 N.E.2d 434, and in *People v. Gardner* (1966), 35 Ill. 2d 564, 571, 221 N.E.2d 232, to the effect that:

> "In a criminal case it is incumbent upon the prosecution to prove beyond a reasonable doubt not only the commission of the crime charged but also its perpetration by the accused.* * * And while the identification and whereabouts of the defendant at the time of the crime are questions for the jury, yet, where from the entire record there is a reasonable doubt as to the guilt of the accused, a judgment of conviction will not be permitted to stand. * * * Where the conviction of a defendant rests upon identification which is doubtful, vague and uncertain, and which does not produce an abiding conviction of guilt, it will be reversed. * * * Neither can we disregard the evidence of alibi where the sole and only evidence contradicting it rests upon the identity of the defendant as the man who committed the crime."

Mays contends specifically that the identifications made of him are doubtful and uncertain because neither of the witnesses included in their descriptions to the police two prominent physical characteristics of Mays, to-wit: (1) that he had a number of missing teeth and (2) that he had a 2½-inch tattoo on his forearm. He also refers to descriptions given by the grocery employee that showed him as being shorter than he was actually and right-handed rather than left-handed. While it is true that failure of a witness to include a certain distinctive physical characteristic in an original description of the offender may affect the credibility of the description (*People v. King* (1st Dist. 1973), 10 Ill. App. 3d 652, 655, 295 N.E.2d 258), the important factor is the ability of the witness to make a positive identification after having had an adequate opportunity to view the offender at the time of the crime. (*People v. Nichols* (1st Dist. 1975), 32 Ill. App. 3d 265, 268, 336 N.E.2d 194.) Where a witness makes a positive identification, precise accuracy in preliminary description is not necessary. (*People v. Ellis* (3rd Dist. 1974), 24 Ill. App. 3d 870, 882, 321

N.E.2d 722.) The discrepancies, if any, go to the weight of the identification testimony and are to be evaluated by the trier of fact. *People v. Chatman* (1st Dist. 1975), 32 Ill. App. 3d 506, 510, 336 N.E.2d 153; *People v. Jones* (5th Dist. 1972), 4 Ill. App. 3d 888, 891, 282 N.E.2d 273.

In the instant case, the circumstances of viewing the defendant were good, as the store was well lit and the forger spent several minutes directly confronting the store personnel in trying to get the check cashed. Each witness separately viewed photographs of several suspects under conditions that do not appear suggestive and each made an identification. Each witness positively identified the defendant at the trial. We had in this case two separate and positive identifications based on an adequate opportunity to observe the offender at the time of the crime. Failure to notice missing teeth or tattoo, and the discrepancies in original description of height are factors to be evaluated by the jury in reaching their verdict. We conclude that they certainly were not so important as to raise a reasonable doubt as to defendant's guilt, in view of a direct and unquestioned identification by both of the employees in court, as we have noted.

Defendant's emphasis also on the "unimpeached alibi" that he was with Miss Miller, when examined carefully indicates that Jane Miller testified that Mays was with her most of the day, but was in the next apartment between 4 and 8 p.m. The check was passed about 6 p.m. so that she did not specifically account for his presence at the time the check was being cashed. There was also the circumstance that the credibility of Miss Miller, as a result of her association with defendant and her testimony, may have been limited in the eyes of the jury. Mays sought to account for the reason his fingerprints were found on the back of the check by raising the possibility that he could have handled the check in the Miller apartment. As a result of a review of the evidence, we believe there was sufficient evidence to support the jury verdict of guilty.

Defendant also claims that he was denied due process by the failure of the State to turn over to him, prior to trial, a handwriting analysis made by the FBI. The possible existence of the analysis came to light during the testimony of Detective James Williams, the investigator who sent the check to the FBI for fingerprint testing. Williams testified that no handwriting analysis had been requested of the FBI but that according to their standard procedure, one probably was made comparing the handwriting on the check to the signature on two or three fingerprint cards. He indicated that there was in fact no analysis or report sent back to him. The FBI agent who testified confirmed that it was standard procedure for the FBI to attempt some handwriting analysis in a forgery case, and that such probably may have been made. He had, however, no

copy of any such report. It was also apparent that the prosecutor's officer never had a copy of any such report either. When it developed that neither an analysis nor a report was received and, since no one had any such report, defense counsel dropped the objection to the testimony as to the fingerprints.

Defendant now argues that there was a violation of the rule announced in *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, where the court said:

> "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

See also *People v. Jones* (1st Dist. 1975), 33 Ill. App. 3d 1025, 339 N.E.2d 519.

■■ Yet trial counsel did not pursue the matter and it was not raised in the post-trial motion as ground for a new trial. The failure to raise an issue in written motion for new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) The waiver rule could, of course, be relaxed in cases of plain error affecting substantial rights. (Supreme Court Rule 615(a), Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).) A brief review of the situation we find shows, we conclude, that no serious error was committed. It is not clear that there was either a handwriting analysis or a report made thereof. There was no evidence of suppression of evidence by the prosecution favorable to the defendant or materiality of any such evidence. It is not apparent that the handwriting analysis report, if there was one, was likely favorable to the defendant or material to his guilt or innocence. Detective Williams testified that the FBI had compared the handwriting on the forged check with Mays' handwriting on two or three fingerprint cards. In any event, the possible error involved in this case on that issue was waived by failure of defendant to pursue the matter further at the trial level.

■■ Defendant finally argues that the indictment was insufficient to charge the crime of forgery. The principles to which defendant refers are applicable only where defendant is charged with forging the document itself. Mays, though he signed the name of Sammie Ralston on both sides of the check, is not charged with having thereby committed a crime. It is unimportant that it is not apparent from the face of the check or from the wording of the indictment that "Sammie Ralston" had any authority to negotiate the check by signing it. (The evidence did in fact show that the offender represented he had authority.) Mays was charged with *delivering* the check. On its face it was purportedly signed by one with authority, Jane Miller, in whose name the account was maintained. It was

made payable to the Eagle store where Mays presented it. The check, therefore, as presented by Mays was already capable of defrauding and no further allegations are necessary.

For the reasons stated, the judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.