THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHNNIE ELLIS, Defendant-Appellant.

Third District   No. 75-24

Opinion filed June 30, 1976.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

David DeDoncker, State's Attorney, of Rock Island (Michael Weinstein and James Hinterlong, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant, Johnnie Ellis, was indicted by the grand jury of Rock Island County for two armed robberies. After a jury trial, the defendant was found guilty of one of the offenses and not guilty on the other. He was

sentenced by the circuit court of Rock Island County to the Department of Corrections for a term of not less than 20 years nor more than 40 years, the term to be served consecutively to a sentence previously imposed.

Defendant Ellis was charged with two armed robberies of Henry Van Theemsche, the first occurring on May 11, 1974, and the second on June 21, 1974. By agreement, the cases were tried together.

At the trial, the complainant, Henry Van Theemsche, testified that on May 11, 1974, at around 5 p.m. he noticed a man walking across the street toward his house. The man asked to cut the grass, and when Van Theemsche advised him he was not interested in his services, the man pulled the storm door open, exhibited a knife, and announced he wanted money. After Van Theemsche gave him between $203 and $208, the man stated he wanted the coins also. Van Theemsche delivered the key to a large chest to the intruder, and the man opened the chest and took out a smaller box that contained Jesus medals. The man did not disturb the other contents of the chest. Before departing, the man made Van Theemsche lie on the bed and tied his arms, using telephone wire and the tops of his pajamas.

On June 21, 1974, Van Theemsche was awaked at approximately 5 a.m. when he heard a noise at his door. The man standing at the door broke the glass and came in. He was carrying a tire iron and stated that he wanted some more coins. The man forced Van Theemsche into the bedroom and made him expose the chest, containing the coins, which was hidden under the bed. Again, the man made Van Theemsche give him the key to the chest, which was in the kitchen, and tied his arms and legs before departing.

Van Theemsche identified the defendant, Johnnie Ellis, as the man who committed both armed robberies. He testified that when he came to his back door on June 21, he recognized the man standing there as the same person who committed the first armed robbery. It was daylight during the time the man was in the house for more than five minutes on May 11, 1974. On June 21, 1974, the man was in the house between an hour and an hour-and-a-half, and there was enough light to see him. After both offenses, Van Theemsche described the robber to the police similarly—Negro man, between 5'8" and 5'10" tall, between 30-35 years old, short hair, and no facial hair.

Officers Lawrence and West both testified that on June 26, after showing Mr. Van Theemsche photos at the hospital and conferring with an Assistant State's Attorney, they proceeded to obtain a warrant to arrest the defendant. Officer Lage testified that he displayed "police photos" to the complainant on June 25, but there is no testimony that defendant's picture was included in that display. The defendant's objection to the characterization of the photos was overruled.

After arresting the defendant on June 26, the police searched his girl friend's apartment and found the majority of the items taken in the robbery, which had occurred five days earlier. Johnnie Jenkins, defendant's girl friend, testified that Johnnie Ellis lived in her apartment about three-quarters of the time. When she arrived home from work on the night of June 22, 1974, she saw the chest containing the various coins and medals. Ellis gave her a "Butter Girl" plate and told her that he had bought the chest from a guy in a sailor uniform.

Samuel Lockett testified that on approximately June 23, 1974, he purchased some of the coins and medals, identified as having been taken in the Van Theemsche robbery, from the defendant for $150.

After the prosecution rested, the defendant testified in his own behalf. He admitted a prior robbery conviction. He stated that he was 25 years old and 5'11". On both May 11, 1974 and June 21, 1974, he had a mustache and his hair was longer than at the time of his testimony. He did not own a white shirt or a sailor type shirt. (Van Theemsche testified the robber wore a white shirt on May 11 and a sailor type shirt on June 21.)

Ellis explained his possession of the coins and medals. He testified that around June 22 or June 23, a black man dressed in a service uniform gave him the chest in exchange for Ellis' promise to secure narcotics for him. He exchanged some of the coins and medals with Samuel Lockett in return for "four quarters of cocaine and four quarters of heroin." Ellis denied that he took coins or medals from Mr. Van Theemsche on either May 11, 1974, or June 21, 1974. The jury found Ellis not guilty of the May 11 robbery but guilty of the June 21 robbery.

On this appeal the defendant argues: (1) When the jury, by means of a collateral verdict of not guilty, has rejected the sole eyewitness identification, possession of recently stolen goods is inadequate to prove armed robbery beyond a reasonable doubt; (2) It was reversible error for two police officers to testify that they obtained an arrest warrant for defendant after showing the complainant a photo display, when the complainant never testified that he made a photo identification; and, (3) The minimum consecutive sentence imposed on defendant is excessive because contrary to the law in force at the time of the commission of the offense.

In arguing the evidence is insufficient to support his conviction of the June 21 armed robbery, the defendant claims this result is required because of the effect of the not guilty finding on the May 11 charge. If the jury rejected the victim's testimony regarding the May 11 robbery, it follows, according to the defendant, that such testimony should also have been rejected with respect to the second robbery, and if so, the verdict was not supported by sufficient evidence.

■■ Although not expressed in precisely such terms, it is defendant's

theory that if the victim's test mony is to be disregarded in one instance, to be consistent it should also be disregarded in other contexts. We do not agree with this argument, since it attempts to apply conclusions from the not guilty verdict which are not appropriate. All that the not guilty verdict means is that the State failed to produce sufficient evidence from which the jury believed defendant had been proved guilty beyond a reasonable doubt. No inferences can be drawn from the verdict which necessarily indicate the jury's opinion on any particular aspect of the case or any particular evidence which the jury considered.

It is well-settled in Illinois that jury verdicts need not be legally or logically consistent. (*People v. Dawson*, 60 Ill. 2d 278, 326 N.E.2d 755; *People v. Murray*, 34 Ill. App. 3d 521, 340 N.E.2d 186; *People v. Taylor*, 132 Ill. App. 2d 473, 270 N.E.2d 628.) As observed in the foregoing cases, there may be many reasons for jury verdicts which appear to be inconsistent, but which in fact may represent perfectly valid reasons so far as the jury is concerned. It may be that the jury desired to be lenient, or it may have believed that if a defendant was found guilty of one offense, no particular useful service would be served by finding him guilty of other offenses. These reasons may have been applicable to the not guilty verdict rendered in the instant case.

■■ . As is pointed out by the People, there are additional reasons shown by the evidence which could account for the different verdicts. The victim's opportunity to observe his assailant during the first robbery was limited. Even though the victim believed the assailants were the same for both robberies, his identification of the first offender is far less definite than that of the second. Because of the weaknesses in the victim's identification testimony, the jury could well have inferred that his identification of the first offender was not convincing but that of the second was. Under these circumstances, we believe the evidence amply supported the jury's verdict.

This brings us to the defendant's next assignment of error and his contention that the evidence regarding the exhibition of photos to the victim, as a prelude to the issuance of a search warrant, was erroneous.

■■ As indicated in the facts, a police officer did exhibit a photo or photos prior to the issuance of an arrest warrant. No claim was made during such testimony that the defendant's picture was either exhibited to, or identified by, the victim. Since this testimony did not purport to show an identification of the defendant by the victim, we are unable to see how any prejudice to defendant could result. The procedure adopted seems to be one of general background detailing the conduct of the parties and had no particular tendency to show the victim's guilt, as would occur where the victim provides a description of an offender. In order to avoid any confusion, we believe the better practice would be not

to include this type of evidence, but we are unable to agree with defendant that prejudice resulted to him. *People v. Coleman*, 17 Ill. App. 3d 421, 308 N.E.2d 364.

Finally, since the People have confessed error with regard to the imposition of the consecutive sentence, we shall not consider the propriety of that matter but will require that the sentence be served concurrently with the prior sentence.

For the foregoing reasons, the judgment of conviction by the circuit court of Rock Island County is affirmed, but the sentence is vacated in part and the cause is remanded to the circuit court of Rock Island County with directions that such sentence be made concurrent with the prior sentence.

Judgment affirmed and sentence vacated in part and cause remanded with directions.

ALLOY, P. J., and BARRY, J., concur.