THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee. *v.* SHERMAN L. BROWN, Defendant-Appellant.

First District (5th Division)    No. 76-283

Opinion filed May 6, 1977.—Supplemental opinion filed on denial of rehearing July 22, 1977.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Timothy Quinn, and Michael W. Ward, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Following a bench trial, defendant was found guilty of rape and deviate sexual assault and sentenced to a term of four to six years. On appeal, he contends (1) there was no valid waiver of a jury trial; and (2) the State's identification testimony was insufficient to prove him guilty beyond a reasonable doubt.

Mrs. Bessie Hill testified for the State that on February 4, 1971, she left

home and began walking south on Racine toward 119th Street to take a bus to her place of employment. She first observed a man on the street approximately half a block north of her, and when she reached 118th Street she noticed that he was jogging in her direction. When he was two feet directly to her right, he commented, "The hawk is out." She testified that the man, later identified as defendant, was not masked and faced her when he spoke. It was light enough to see his face and she responded, "Yes, and I just missed my bus." There was no further conversation, but as she continued to walk ahead he threw a coat over her head. She started to struggle, but he hit her in the face and then dragged her to an abandoned car where he forced her in the back seat and committed the sex offenses for which he was tried. She was unable to see her assailant during this time, because the coat was still covering her head and, even when the sex acts had been completed and the coat had been removed, she was too frightened to immediately look but she did observe him running north on Racine toward 117th Street. She then went to a neighbor's house and called police who took her to Roseland Hospital where she was examined. On June 15, 1971, she went to police headquarters and viewed a five-man lineup and identified defendant as her assailant. She also identified him at trial.

On cross-examination, she stated that she was walking slowly because of ice on the sidewalks and that she saw her assailant's face only during the conversation, which took from five to ten seconds. Within 30 minutes after the assault, she described her assailant to the police as being 25 years old, 5 feet 4 inches tall, and weighing about 150 pounds. She gave no facial description and, although she first told the police her assailant did not have a beard, she later stated she did not recall whether he had a beard either at the time of the attack or at the lineup. She admitted having intercourse with her husband the night before the attack.

Jerry Springer testified he had been a policeman for 19 years and that after defendant had been identified in the lineup, he told defendant that he had been identified and, after he had been given the *Miranda* warnings, defendant admitted committing the rape but denied any attacks upon others. Defendant then said he wanted to see his mother, who was waiting with his wife in a nearby room. Springer testified that he and Officer O'Connell accompanied defendant to meet his mother and, as they approached, she stood up to embrace defendant and he said, "Mama, I did it."

On cross-examination, Springer stated that on the day of his arrest defendant was 5 feet 8 inches tall and weighed 175 pounds. Initially, he did not recall whether defendant wore a short goatee but, after examining a copy of his police report, he stated that defendant had a mustache, goatee and long sideburns.

The following facts were stipulated to by the parties—that the examination of the prosecutrix at Roseland Hospital disclosed no visible injury, but a vaginal smear was positive—indicating the presence of spermatozoa; that Brown sustained an injury on February 2, 1971, when a casting dropped on his right foot; that Dr. Paul Vanderbilt, if called, would testify that on February 2, 1971, he treated Sherman Brown for an injury to a toe which he X-rayed, splinted, and taped and advised Brown not to stand while at work; and that, if called, Dr. Earl Fredrick would testify that Sherman Brown was under his medical care on February 4, 1971, for a contusion of the left foot, for which he advised him to remain off his feet and off work from February 4 to February 16.

Four witnesses for the defense testified:

Nelda Foggie, who lived next door to defendant, could not remember the exact days but recalled that in the first three months of 1971 he had a wrapping on his foot and walked with the aid of a crutch.

Barbara Jones testified that she knew defendant for eight years and noticed on February 2, 1971, and again on February 6, 1971, that his foot was wrapped with an ace bandage held together by clips.

Defendant's mother testified that on February 2, 1971, he left home after 3 p.m. to go to work at the Clark Equipment Co. When he came home from work that night, his foot was bandaged and it was still wrapped on February 4. In June, after the lineup, she had a conversation with defendant in the presence of his wife, Officer Springer, and another officer. Defendant said then that the police were trying to make him confess to all the rapes committed in the area and that he did not commit any of them.

Defendant's wife testified that on February 2, 1971, he walked with the aid of a crutch, since his foot was bandaged, and that this condition continued through February 4. She also said that defendant never admitted in her presence that he committed the rape of which he was accused.

The parties then stipulated that if Officer O'Connell were called in rebuttal, his testimony would be substantially the same as that of Officer Springer.

OPINION

■■ Defendant first contends, "[w]here the transcript is silent and the only evidence of defendant's jury waiver is a written form and the clerk's memo that defendant was admonished, the waiver of a jury trial is not expressly and intelligently made." Whether a jury waiver is knowingly and understandingly made depends on the particular facts and circumstances of each case. (*People v. Richardson* (1965), 32 Ill. 2d 497, 207 N.E.2d 453.) The court has a duty to ascertain whether the waiver had

been understandingly made. (*People v. Bell* (1969), 104 Ill. App. 2d 479, 244 N.E.2d 321.) However, an explanation of the ramifications of a jury waiver is necessary only when the facts and circumstances indicate defendant did not understand his right to trial by jury and, in this regard, he is held to have knowingly and understandingly waived a jury trial when his attorney, with whom he had an opportunity to confer, waives a jury in his presence and without his objection. (*People v. Sailor* (1969), 43 Ill. 2d 256, 253 N.E.2d 397.) Our supreme court, in *People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762, said that the preferred jury waiver procedure was that contained in the American Bar Association Standards relating to the Administration of Criminal Justice, as follows:

"The court should not accept a waiver unless the defendant, after being advised by the court of his right to trial by jury, personally waives his right to trial by jury, either in writing or in open court for the record." 60 Ill. 2d 287, 291, 326 N.E.2d 762, 765.

In the instant case, a jury waiver form dated October 30, 1974, was signed by defendant, and it contained the following statement:

"I, the undersigned, do hereby waive jury trial and submit the above entitled cause to the court for hearing."

The record also contains a five-page document of the trial court, entitled "Memorandum of Orders," in which there is a clerk's entry dated October 30, 1974, stating as we interpret it, that the parties were present and a plea of not guilty was entered; that defendant was advised of but waived his right to trial by jury; that he signed a jury waiver; and that after testimony was heard, a motion for mistrial was made following which more testimony was heard.

We note that most of the content of this October 30, 1974, notation is otherwise supported by the record. Included in it is the signed jury waiver, and the transcript of proceedings reveals that the trial commenced and testimony was heard on that day; that a motion for mistrial was made and, following its denial, additional testimony was taken. The only matter in the October 30, 1974, notation not specifically found in the record is the statement that defendant was advised to his right to a jury trial. It is significant, however, that defendant was represented by private counsel and the case proceeded as a bench trial, which would indicate there had been a jury waiver. Further, in the first page of the transcript of proceedings, it appears that prior to the commencement of trial on October 30, certain preliminary matters were discussed as evidenced from the comment of defendant's counsel to the court just before making an opening statement that, "We answered ready this morning." No transcript of those morning proceedings was included in the record, nor for that matter were any of the transcripts of the numerous pretrial proceedings, other than this arraignment. The party

who brings a cause to a reviewing court must present a record which clearly and fully presents all matters necessary and material for a decision of the questions raised (*Interstate Printing Co. v. Callahan* (1974), 18 Ill. App. 3d 930, 310 N.E.2d 786), and where the record is incomplete, the reviewing court will presume any stated facts not inconsistent with the record which will sustain and support the judgment of the trial court. *People v. Zimmerman* (1965), 57 Ill. App. 2d 190, 206 N.E.2d 741.

■■ Here, the record is incomplete because of the absence of a transcript of the preliminary proceeding at which the question of a jury waiver would have been and apparently was discussed. The record indicates that defendant was present with his attorney when the trial began on October 24, 1974, and nowhere does it appear that either objected to a bench trial. In *Murrell,* the court in refusing to presume from a silent record that the waiver of a jury trial was not knowingly and understandingly made, thought it was significant that neither of the defendants there had urged that he wanted or was deprived of a jury trial or that he was prejudiced by his counsel's waiver thereof. So too here, defendant makes no such contentions. He asserts only that the record is silent as to a waiver, and we will not assume from such a record that the waiver was not knowingly and understandingly made. See *Murrell; People v. Burnett* (1975), 35 Ill. App. 3d 109, 341 N.E.2d 86.

Defendant also asserts that he was not proved guilty beyond a reasonable doubt. He argues that the combination of the numerous discrepancies in his identification as the assailant, the lack of corroboration of complainant's testimony, and the unrebutted fact of his foot injury raised a reasonable doubt of his guilt. We again disagree.

■■ Where a witness makes a positive identification, precise accuracy in the description is not necessary. (*People v. Ellis* (1974), 24 Ill. App. 3d 870, 321 N.E.2d 722.) The discrepancies, if any, go to the weight of the identification testimony and are to be evaluated by the trier of fact. (*People v. Chatman* (1975), 32 Ill. App. 3d 506, 336 N.E.2d 153.) The important factor is the ability of the witness to make a positive identification after having had an adequate opportunity to view the offender. *People v. Nichols* (1975), 32 Ill. App. 3d 265, 336 N.E.2d 194.

■■ In the instant case, Hill observed defendant twice at some distance and once when he was only two feet away. During this encounter, she observed him from five to ten seconds when, as she stated, it was light enough for her to see his face. (See *People v. Williams* (1975), 25 Ill. App. 3d 604, 323 N.E.2d 499 (abstract).) In addition, she identified defendant from the lineup and again at trial. Her failure to describe defendant's facial hair only went to the weight of her testimony, and in this regard we note from a photograph in the record of the lineup which included defendant that his facial hair was both short and light. Other

discrepancies contained in Hill's description concerning the assailant's height and weight, as well as her failure to notice his clothes, go to the weight of her testimony which is for the trier of fact to determine. (*Chatman.*) The significance of defendant's foot injury also presents a question for the trier of fact. We note that the injury was only to a toe, which one doctor said he splinted and wrapped and told defendant not to stand while at work and the other doctor described as a contusion for which he advised defendant to remain off his feet for a period of time. Foggie testified that during the winter of 1971 she noticed that defendant's foot was bandaged. Defendant's mother and his wife also testified his foot was bandaged. Jones said that defendant had a crutch and wore an ace bandage, which she described as being of an elastic material that wrapped around his foot. None of the defense witnesses accounted for defendant's presence at the time of the offenses, and there is no testimony in the record that defendant was incapacitated to the extent that he could not walk or run.

■■ We recognize our duty to carefully examine the evidence in rape cases, but we will not encroach upon the function of the trier of fact to weigh credibility and assess the evidence presented. (*People v. Collins* (1974), 21 Ill. App. 3d 800, 315 N.E.2d 916.) We note also that to sustain a conviction of rape, the testimony of complainant must be clear and convincing or corroborated by other facts and circumstances. (*People v. Jackson* (1971), 3 Ill. App. 3d 303, 279 N.E.2d 8.) Here, there was testimony from the police officers that on two occasions defendant admitted the rape. Moreover, the Hill testimony was strong and unwavering even under vigorous cross-examination. Therefore, we believe that not only was her testimony clear and convincing but it was also supported by corroborating facts.

In a bench trial, we will not substitute our judgment for that of the trial court unless the proof is so unsatisfactory as to justify a reasonable doubt of defendant's guilt. (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363; *People v. Tillis* (1976), 40 Ill. App. 3d 66, 351 N.E.2d 332), and we have not found it so in this case.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

With his petition for rehearing, defendant filed what he termed to be a "supplemental record,"[1] containing two short statements from court reporters which he suggests established that there were no trial court proceedings in this matter on the morning of October 30, 1974. Based solely on these statements, it is argued that reversal is mandated because defendant could not have been admonished at that time relative to his right to a jury trial. In one of the statements, Alpha Martin states:

> "I did not take the case of Sherman Brown before Judge White on the 30th day of October, 1974. I was only present for a half hour because the reporter for that court was late. The case of Sherman Brown was not even called while I was there."

In the other, Ruth Sayre states:

> "[T]hat I was assigned to Judge DANIEL J. WHITE'S court on October 30th, A.D. 1974. I transcribed my shorthand notes pertaining to the case of People of the State of Illinois versus Sherman Brown, at a hearing commencing at 2:00 o'clock P.M. on said date. I hereby certify that on said date there was nothing relative to the Sherman Brown case heard in the morning."

Initially, it is noted that the statements are unverified and that neither court reporter stated she was present in the courtroom on the morning in question. Martin does not say whether her half-hour presence was in the morning or afternoon. She does state, however, that the reporter assigned to the courtroom in question was late in appearing that day. Sayre says that she was the assigned reporter and was present during the afternoon session. Although she makes no statement as to being in the courtroom during the morning session, she nevertheless concludes that nothing related to the instant case was heard in the morning. This conclusion is not supported by the record, in which there is a jury waiver signed by defendant on October 30, 1974, and a corroborating entry in the "memorandum of orders" on the same date.

The trial commenced in the afternoon session of the court on October 30 and, because the transcript of proceedings contains no reference to the jury waiver, it appears that the admonitions took place either during the morning session or at some time not attended by either of the two court reporters. A morning session was indicated from the comment of defendant's attorney when the case was called in the afternoon of October 30, that "We answered ready this morning." In the light of the foregoing, we reject defendant's contention that reversal is mandated by the content of the court reporter statements.

Moreover, even were we to assume that there was no such morning session, it remains our belief that defendant knowingly and

---

[1] This "supplemental record" was not in conformance with the rules but, in the absence of objection thereto, we allowed it to be filed.

understandingly waived a jury trial. We think that the following facts are more significant and are in themselves controlling of this issue.

First, defendant did sign a jury waiver on October 30 while being represented by counsel;

Second, the October 30 entry in the memorandum of orders clearly states that he was advised of his right to a jury trial and, after being so informed, that he signed the waiver;

Third, no objection was made at the commencement of trial on October 30 to the case being heard without a jury;

Fourth, defendant does not urge that he wanted or that he was deprived of a jury trial; and

Fifth, he does not contend that he did not sign the waiver or that it was not voluntary or that he was in any way prejudiced by it.

As stated in *People v. Murrell* (1975), 60 Ill. 2d 287, 291, 326 N.E.2d 762, 765:

> "Neither of the defendants in these cases now before this court has urged that he wanted or that he was deprived of a jury trial. Also neither defendant urges that he was in any way prejudiced by his counsel's waiver. There is no contention that the waiver was not voluntary. Under these circumstances we will not reverse the convictions. *People v. Dudley*, 58 Ill. 2d 57; *People v. Morehead*, 45 Ill. 2d 326."

In view thereof, we will not reverse the conviction here, and defendant's petition for rehearing will be denied.

Petition for rehearing denied.

MEJDA and WILSON, JJ., concur.