THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KARL STRATER, Defendant-Appellant.

Fourth District   No. 15121

Opinion filed June 13, 1979.—Rehearing denied July 10, 1979.

Robert I. Auler, of Auler Law Offices, of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Marc D. Towler and Gary J. Anderson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

On January 7, 1978, the defendant, Karl Strater, was charged by

information with one count of rape and two counts of deviate sexual assault in violation of sections 11—1 and 11—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 11—1, 11—3). Following jury trial, the defendant was found guilty of both offenses and sentenced to two concurrent terms of 6 years' and 6 months' imprisonment.

The record reflects that on December 20, 1977, the prosecutrix left her place of employment and walked toward her residence in Urbana, a walk which usually took 7 or 8 minutes. A vehicle passed her and stopped in the middle of the block. A man got out of the vehicle and appeared to be checking his tires. As she walked by the vehicle, this person suddenly grabbed her and began kissing her. The man then walked her to a location behind a garage which was lighted by a pole light two or three feet away. There, the man raped her and committed deviate sexual assault. While under the light, the prosecutrix was able to observe her assailant "up close" for about three minutes. The entire episode took approximately 10 minutes, after which the assailant walked toward his vehicle. The prosecutrix clothed herself and walked the short distance to the apartment of friends where police were called.

The prosecutrix described her assailant to police as a white male in his early twenties, approximately 5 feet 9 inches tall, wearing glasses, with dark wavy hair about ear-length, and wearing a gray, hooded sweatshirt and a blue waist-length jacket. She also described the vehicle driven by her assailant as a blue El Camino or Ranchero (a vehicle whose front looks like a passenger car and whose rear is open like a truck bed) with a white camper top.

On January 4, 1978, Officer Donald Weber stopped defendant's car at 5:45 p.m. in the area where the rape occurred because defendant and his vehicle matched the description given by the victim. Defendant was driving his father's blue El Camino and was wearing a gray, hooded sweatshirt and a blue denim waist-length jacket. Defendant was told there had been criminal activity in the area. Officers Krueger, Walsh, and De-Jong then arrived. Weber testified that the defendant was not free to leave at this time and that defendant agreed to Weber's request to go to the police station to be photographed. Defendant, however, testified that he was never told that he was under arrest and acceded to the request to come to the police station to be photographed only after Krueger threatened to arrest him.

Defendant parked the El Camino outside the station, locked the vehicle leaving his coat inside, and entered the police station. Officers Krueger, Walsh and De-Jong were present with the defendant in the interrogation room. The officers wanted to photograph defendant wearing his coat but to get the coat, he needed defendant's car keys. De-Jong testified that defendant said, "The vehicle's locked, you'll need the

keys," and then voluntarily handed his car keys to De-Jong. According to defendant, De-Jong said, "Let's have the keys." Defendant testified that he had no choice but was "forced" to surrender the keys. Defendant's coat was retrieved from his car, after which he was photographed wearing the coat. Thereafter defendant was questioned concerning his whereabouts on December 20, 1977. Defendant was at the station between 45 minutes to an hour before he was allowed to leave. Defendant did not feel he was free to leave, and at no point on January 4, 1978, was he given a statement of his rights.

On January 6, 1978, the prosecutrix viewed a photographic lineup at the Urbana police station. She had viewed the photographs on a prior occasion but had not made an identification. The January 6 photograph lineup consisted of three poses for each of five different persons. The prosecutrix was not told that a photograph of the person who had attacked her was included in the group of photographs which she was shown on January 6, nor did the police point out any particular photograph. She looked at the photos for a few minutes and then picked one of the photographs, a photograph of the defendant, as that of her attacker. She recalled saying, "That's him, I think that's him, but I'm not for sure." Of the five persons whose photographs she viewed on January 6, the prosecutrix testified that she recognized two of the men as employees of the city of Urbana who did business at her place of employment.

On January 7, 1978, the day defendant was arrested, Officer Krueger called defendant's fiancee and asked her to bring defendant's jacket and sweatshirt to the police station. She complied, although defendant never authorized her to do so. On January 13, 1978, the prosecutrix viewed a live lineup. One at a time, five participants walked to a one-way window beyond which the prosecutrix was located. Each wore a gray, hooded sweatshirt, a blue jean's jacket, and glasses, and repeated a line three times. The prosecutrix identified one of the participants, the defendant, as her attacker.

Prior to trial, defendant filed a motion to suppress the following evidence: (1) statements made to police after being taken into custody on January 4, 1978; (2) photographs of him taken by police on January 4, 1978; (3) any evidence based on the use of those photographs; (4) the denim jacket and hooded sweatshirt belonging to the defendant; (5) evidence of the lineup identification of defendant made by the victim; and (6) any in-court identification made by the victim. During argument on defendant's motion to suppress, the State conceded that defendant was not given the *Miranda* rights on January 4, and that his statements made on that date should therefore be suppressed. The State also conceded that defendant's jacket and sweatshirt should be suppressed

because they were improperly seized from his residence when the police requested his fiancee to bring them to the police station without defendant's consent.

In ruling on the motion to suppress, the trial court found that defendant was placed under arrest on the street at the time he was taken to the police station. The court further found that, based upon Officer Weber's knowledge at the time of the arrest, there was probable cause for the arrest. Because defendant was not given *Miranda* warnings, his statements made at the police station on January 4 were suppressed. Defendant's jacket and sweatshirt were also suppressed, as was the live lineup conducted on January 13, 1978, using those items.

The court, however, found that defendant had consented to the removal of his clothing from his car on January 4; therefore, the court refused to suppress the photographs of the defendant taken after his arrest on January 4. The court also refused to suppress the photographic identification of defendant made by the prosecutrix. The court determined that the photographic identification was not unduly suggestive.

On appeal, defendant contends that his consent to the removal of his jacket and sweatshirt from his vehicle was involuntarily given as a result of the coercive circumstances surrounding his interrogation on January 4, 1978. Alternatively, defendant argues that the photographic display from which the prosecutrix picked his picture was unduly suggestive because she recognized two of the five men involved as employees of the city of Urbana. Consequently, defendant maintains that the photographs of him wearing these items and the photographic identification of him made by the prosecutrix were improperly admitted into evidence at trial.

■■ ■ Defendant, however, first introduced the subject of the photographic identification at trial during his cross-examination of the prosecutrix. The photographs from which the prosecutrix selected the defendant's picture as that of her attacker were submitted as defendant's exhibits Nos. 1 through 15. It is well established that if a defendant procures, invites or acquiesces in the admission of evidence, even though it may be improper, he cannot complain on review. (*People v. Burage* (1961), 23 Ill. 2d 280, 283, 178 N.E.2d 389, *cert. denied* (1962), 369 U.S. 808, 7 L. Ed. 2d 555, 82 S. Ct. 651; *People v. Forbis* (1973), 12 Ill. App. 3d 536, 539, 298 N.E.2d 771.) Defendant, therefore, is estopped from urging any error here resulting from the admission of testimony concerning the pretrial photographic identification. Even assuming, *arguendo*, that the admission of the evidence concerning the photographic identification was tainted, we regard such admission as harmless error since the prosecutrix had a clear and independent opportunity to view her assailant during the occurrence and made a positive in-court identification. In-court

identification of a defendant is proper if it is based upon an origin independent of a tainted identification procedure. *United States v. Wade* (1967), 388 U.S. 218, 241-42, 18 L. Ed. 2d 1149, 1165-66, 87 S. Ct. 1926; *People v. Blumenshine* (1969), 42 Ill. 2d 508, 514, 250 N.E.2d 152, 155; *People v. Meredith* (1976), 37 Ill. App. 3d 895, 900, 347 N.E.2d 55.

Defendant lastly contends that he was not proven guilty beyond a reasonable doubt. Defendant argues that aside from the prosecutrix's testimony, no evidence is presented placing him at the scene of the attack on December 20, 1977. The defendant also points to the support given as alibi by the testimony of several witnesses in his behalf.

■ This court has held that the sufficiency of identification testimony is a question of fact for the jury, and the jury's determination will not be disturbed on review unless the testimony is so unsatisfactory as to leave a reasonable doubt of an accused's guilt. (*People v. Driver* (1978), 60 Ill. App. 3d 381, 385, 376 N.E.2d 803.) Moreover, it is quite clear that the testimony of a single identification witness is sufficient to support a conviction if the witness viewed the accused under circumstances permitting a positive identification to be made. (*People v. Jones* (1975), 60 Ill. 2d 300, 307, 325 N.E.2d 601, 605; *Driver*, 60 Ill. App. 3d 381, 385, 376 N.E.2d 803, 807.) The trier of fact is not required to accept alibi testimony over the postive identification of an accused even though the alibi testimony is given by a greater number of witnesses. *People v. Jackson* (1973), 54 Ill. 2d 143, 149, 295 N.E.2d 462, 464.

■ As we have previously noted, the prosecutrix observed her assailant under well lighted conditions which included an opportunity to view the assailant's face at close interval for three minutes. She was able to describe with particularity the perpetrator's features, build and clothing. She also described the vehicle driven by her attacker. The prosecutrix made a positive identification of defendant in court. The seminal stain found on panties worn by the prosecutrix on the evening of the occurrence contained substances from defendant's blood group. Finally, the rebuttal testimony of Officer Lockard that he saw defendant's vehicle, with the topper, parked outside defendant's trailer at 31 Sanibel during the late night hours of December 20, 1977, conflicts with the crux of defendant's alibi defense that the topper was not on the El Camino that night. We conclude that the jury's determination of defendant's guilt should not be disturbed.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

TRAPP and GREEN, JJ., concur.