THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY L. BERRY, Defendant-Appellant.

Third District   No. 79-112

Opinion filed July 29, 1980.

STOUDER, J., concurring in part and dissenting in part.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant Terry Berry was charged with the August 15, 1978, rape and robbery of Deborah Crowley. Following a jury trial, he was acquitted of the robbery and convicted of the rape. He was sentenced to a 12-year term of imprisonment.

At trial Crowley, a high school student, testified that on the date in question she left work at 11:50 p.m. She was walking home on Kellogg, a dark street, when a large, old, white car passed her and turned right on the first side street, Cedar. When she arrived at the intersection, she saw the car parked on Cedar. Suddenly, a man appeared from underneath a tree, grabbed her, and pushed her into an inlet of a nearby church where he demanded her money. While she looked in her billfold for her money, the man stepped back, and the street light shined on his face. She thus had a good view of him as she gave him $20. He then forced her around the side of the church through a parking lot with a large light. When she looked at him to see what he looked like, he pushed her face away. He then took her underneath a bush in the backyard of the minister's house, where it was dark, pulled her pants down, and raped her. Afterwards the man then asked for more money which she gave him. She then went home and reported the attack to her father. Crowley testified that she identified defendant as the rapist at a lineup 2 days after the incident. She also identified him in court. She said she really got a good look at her attacker when he stepped away from her at the church and again in the parking lot.

On cross-examination Crowley said that her attacker was wearing jeans and what looked like a dark-colored tank top. She did not notice anything distinctive about his jeans or an unusual odor about him.

Crowley's father testified that when his daughter arrived home, she was crying and shaking. She told him a man had grabbed her and taken all of her money. When her father asked her if she had been raped, she replied that she had.

The doctor who examined Crowley at the emergency room testified that Crowley was bleeding from the vagina, had a cervical abrasion and a torn hymen. Spermatozoa were found in the vagina.

A forensic scientist testified that he compared hair standards of defendant with pubic hair combings from Crowley, and that they were

similar. On cross-examination he stated that hair comparison is not an accurate science, and that the conclusion that hairs are similar is the extent of what a comparison can reveal. He said the most notable thing about the hair samples he compared was that they were both Negroid. He also testified that blood found on Crowley's panties was determined to be type O. He was sure Crowley's blood was type O although he did not test it. Blood found on defendant's undershorts was type B. Defendant's blood was type A.

Police officer John Fulton testified that at about 3 a.m. on the night of the incident he saw defendant in a lime green 1969 4-door Oldsmobile, a large car. When Fulton saw him an hour later, defendant was wearing a blue jean vest with white buttons, no shirt, and blue jeans with small silver studs on the sides.

For the defense, defendant testified that on the night in question he and a friend named Leonard left the Poison Apple about midnight in defendant's sister's car, a green Oldsmobile. They drove around talking. After dropping Leonard off at a 7-11 Store, defendant drove home. He said that because of an earlier accident, gas fumes leaked into the car, and that the smell of fumes lingering on his clothes after leaving the car had prompted complaints from his sister. He said that he wore blue jeans with studs, a blue shirt and a blue jean vest that night. He denied raping Crowley, saying he had never seen her before.

Following defendant's conviction, a presentence investigation report was prepared. At the sentencing hearing the State introduced the testimony of two witnesses in aggravation. Christine Sherman, a 17-year-old girl, testified that she had been raped and robbed 2 days prior to the rape of Crowley. Sherman was walking down Laura Street at about 11 p.m. when a man came up behind her and grabbed her. He took her down an alley and demanded her money. She gave him about $7 and told him that was all she had. He replied that he knew she had more and threatened to kill her if she did not give it to him. She gave him about $48 more. He took her further down the alley into a garage where he told her to take down her pants. When she refused, he took them down, raped her, and forced her to perform fellatio. Afterwards, he ran away down the alley. Sherman said she got a good look at her attacker and would be able to recognize him. She was, however, unable to identify defendant in court as her attacker. She said that she viewed a five-man lineup about 4 days after the incident. She identified number 4 as the rapist. Police Officer Paul Hilst testified that defendant wore number 4 at the lineup. Sherman did not report the incident until she was arrested for carrying a straight razor about 3 days after the incident. At the time of the sentencing hearing defendant had not been convicted of the rape of Sherman. The defense motion to strike Sherman's testimony was denied.

Defendant's first argument on appeal is that the State failed to prove his identity as the rapist beyond a reasonable doubt. He maintains that Crowley had an inadequate opportunity to observe her attacker. He points out that Crowley testified that the car which passed her and was parked on Cedar shortly before the incident was white, whereas Officer Fulton said the car defendant was driving was lime green. Whereas Crowley said the rapist wore jeans and what looked like a dark-colored tank top, Fulton said defendant had on a blue jean vest with white buttons and jeans with silver studs on the sides. Although Crowley did not notice any unusual odor about her attacker, defendant testified that he smelled of gas fumes. Defendant also points out that although Crowley bled from her vagina, the blood found on defendant's undershorts was type B, rather than type O, Crowley's type. Finally defendant argues that the verdict of not guilty of robbery, although not legally inconsistent with the conviction of rape, indicates the jury's doubt that defendant was the attacker.

■■■ We find these arguments unpersuasive. A positive identification by a single witness who had an adequate opportunity to observe the offender is sufficient to support a conviction. (*People v. Vriner* (1978), 74 Ill. 2d 329, 343, 385 N.E.2d 671, 677, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858; *People v. Strater* (1979), 72 Ill. App. 3d 486, 390 N.E.2d 979.) When a witness makes such an identification, the discrepancies between the description of the offender and the defendant's appearance are to be evaluated by the trier of fact. (*People v. Brown* (1977), 50 Ill. App. 3d 348, 365 N.E.2d 907; *People v. Mays* (1976), 38 Ill. App. 3d 182, 347 N.E.2d 235.) In the instant case Crowley testified that she got a good look at her attacker when he stepped back from her at the church so that the street light shined on his face. She got another good look at him when he forced her through a parking lot with a large light. She identified defendant as the rapist at a lineup 2 days after the incident and identified him in court without expressing any uncertainty on the matter. In light of this testimony, we conclude that Crowley had an adequate opportunity to view her attacker, and that the discrepancies in the description of the clothing, the odor of gas fumes, and the car were matters for the jury's consideration. Moreover, it cannot be concluded from the acquittal on the robbery charge that the jury had doubts about defendant's identity as the rapist. As this court stated in *People v. Ellis* (1976), 39 Ill. App. 3d 766, 769, 350 N.E.2d 265, 267:

"[T]here may be many reasons for jury verdicts which appear to be inconsistent, but which in fact may represent perfectly valid reasons so far as the jury is concerned. It may be that the jury desired to be lenient, or it may have believed that if a defendant

was found guilty of one offense, no particular useful service would be served by finding him guilty of other offenses."

As for the inconclusive blood type evidence, suffice it to say that a reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence and should not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) We acknowledge the duty of a reviewing court to examine carefully the evidence in a rape case (*Brown*) and conclude the evidence in the instant case is not so improbable as to raise a reasonable doubt of guilt.

*People v. Reese* (1973), 14 Ill. App. 3d 1049, 303 N.E.2d 814, upon which defendant places great reliance, is readily distinguishable. In reversing the defendant's rape conviction, the court in *Reese* pointed out that:

> "[The prosecutrix] had no particular reason to examine the facial features of her assailant during the few seconds she saw him in the vestibule before the attack * * *." (14 Ill. App. 3d 1049, 1053, 303 N.E.2d 814, 818.)

In the instant case, although it is not clear exactly how long Crowley viewed her attacker's face in the light at the church and in the parking lot, she did testify that he stepped back from her at the church "for about a minute and a half." Moreover, she said that while going through the parking lot, she looked at him "to see what he looked like." Obviously she had several good opportunities to look at her assailant during the course of the confrontation and attack. Furthermore, the court in *Reese* was concerned about the lack of evidence corroborating that the complaining witness had been raped at all. 14 Ill. App. 3d 1049, 1054-55, 303 N.E.2d 814, 818-19.

Defendant's final argument is that his sentence of 12 years' imprisonment is excessive. He maintains the testimony concerning the rape of Sherman should have been stricken.

Such testimony was clearly relevant to the sentencing determination. One of the factors in aggravation listed in section 5—5—3.2 of the Unified Code of Corrections is:

> "[T]he defendant has a history of prior delinquency or criminal activity." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2.)

While it is true that in sentencing the defendant, a trial judge should determine the accuracy of evidence in aggravation and take care to shield his mind from the prejudicial effect of improper evidence (*People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451), the trial judge in the instant

case did so. Sherman's testimony was presented in open court and was subjected to a vigorous cross-examination by defense counsel. (See *People v. Davis* (1976), 38 Ill. App. 3d 649, 348 N.E.2d 533.) In any event, it appears that such testimony had little, if any, effect on the sentence since in stating his reasons for imposing a 12-year term of imprisonment, the trial judge did not discuss the rape of Sherman.

Moreoever, the admission of this testimony did not deprive defendant of due process of law. In *United States v. Grayson* (1978), 438 U.S. 41, 57 L. Ed. 2d 582, 98 S. Ct. 2610, the defendant was convicted by a jury of prison escape and sentenced to a 2-year term of imprisonment, consecutive to his unexpired sentence. In determining sentence, the judge who presided at trial considered his belief that the defendant testified falsely at trial. On appeal, defendant argued that such consideration violated his right to due process of law because of the possibility that the sentence amounted to punishment for the crime of perjury for which he had not been indicted, tried, or convicted. The court rejected this argument, stressing the importance of relevant information concerning the defendant's rehabilitative potential in the sentencing determination. The court cited with approval *Williams v. New York* (1949), 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079, in which it was held that the due process clause was not violated when the trial judge, in sentencing the defendant to death for first-degree murder, considered hearsay evidence of his participation in 30 burglaries of which he had not been convicted. 438 U.S. 41, 53-54, 57 L. Ed. 2d 582, 592, 98 S. Ct. 2610, 2617.

■ Although this court is authorized to modify the sentence, there is a rebuttable presumption that the sentence imposed by the trial judge is proper. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1.) Defendant has not overcome that presumption in the instant case. He was convicted of raping a 17-year-old girl who was crying and shaking when she reported the incident to her parents. The doctor who examined her in the emergency room testified that she was bleeding from the vagina, had a cervical abrasion, and a torn hymen. Although at the time of sentencing defendant had not been convicted of any offenses occurring prior to the instant offense, he had pleaded guilty to a robbery committed the day after he raped Crowley. A psychological evaluation appended to the presentence investigation report concluded that defendant had a high potential for recidivism. Rape is a Class X felony. (Ill. Rev. Stat. 1979, ch. 38, par. 11—1.) In the absence of factors justifying an extended term, the sentence for a Class X felony shall be not less than 6 nor more than 30 years. (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—8—1(a)(3) and 1005—8—2.) In light of the harm to the victim, the need to deter others, the robbery conviction, and defendant's high potential for recidivism, a 12-year term

of imprisonment is not excessive. See Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1 and 1005—5—3.2.

For the reasons stated above, the conviction and sentence entered by the Circuit Court of Peoria County are affirmed.

Affirmed.

BARRY, J., concurs.

Mr. JUSTICE STOUDER, concurring in part and dissenting in part:

I join with my colleagues in affirming the conviction of the defendant for rape. However, I believe this case should have been remanded to the trial court for reconsideration of the sentence to be imposed. The disputed evidence of the unrelated offense of rape should not have been introduced or considered by the trial court with relation to the sentence to be imposed.

My colleagues seem somewhat ambivalent about the propriety of the court receiving evidence of an unrelated offense. They suggest that the presentation of the evidence was proper but in any event the trial court would and should have disregarded any improper evidence and, finally, that the court did not consider such evidence because it was not specifically mentioned in connection with the sentence which was imposed. These latter arguments suggest that my colleagues do not believe that the evidence should have been received but, in effect, hold the admission of such improper evidence to be harmless error. It should be recalled the defendant was never even charged with the unrelated rape offense, and indeed the evidence itself suggests that a conviction thereof would have been doubtful. Where such evidence has been presented it is difficult to avoid the conclusion the defendant was being punished not only for the present offense but for another offense of which he was never charged and never convicted.

This evidence was deliberately and intentionally introduced into the case by the prosecution as support for the imposition of an enhanced sentence. To say the trial court ignored the evidence or gave it no effect on the sentence is contrary to the purpose for which the evidence was introduced and disregards the prejudicial effect of such evidence.

I would therefore remand this case for reconsideration of the sentence in the absence of improper and prejudicial evidence.