[No. 1558–3.   Division Three.   May 24, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. FRED A.
COLBERT, *Appellant.*

*Michael R. Pickett* and *Bennett, Carroll & Pickett,* for appellant (appointed counsel for appeal).

*C. J. Rabideau, Prosecuting Attorney,* for respondent.

BUCKLEY, J.*—The defendant, Fred A. Colbert, appeals convictions on two counts of indecent liberties, one count of carnal knowledge, one count of sodomy and one count of incest, contending the court erred in: (a) refusing to dismiss the charges against the defendant due to lack of a speedy trial; (b) refusing to grant a mistrial based on the conduct of the jurors; (c) allowing the prosecutor to impeach the credibility of the defendant as a witness by use of a supposed prior conviction for criminal nonsupport; and (d) allowing the prosecution to impeach the credibility of a witness concerning the witness' failure to obtain a doctor's examination. We affirm.

On November 22, 1974, the defendant first appeared in court, pleaded not guilty to all charges, and was released. The trial was set for January 13, 1975. As a convenience to the prosecution, by telephone call of January 8, 1975, defense counsel consented to the resetting of the case for February 10, 1975.

Neither attorney had had an opportunity to interview a material witness. It was discovered that the witness was out

---

*Judge Sidney R. Buckley is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

of town and would not return until February 9 or 10. February 17 was a legal holiday. Due to a jury trial in another county, defense counsel was not available on February 19. In a telephone conversation January 15, these matters were discussed by counsel, and they mutually agreed to have the case set for February 24, 1975. February 20 was the ninetieth day.

Late on February 21 or early on the 22nd, defense became so ill that he could neither try the case as scheduled nor handle the case in the foreseeable future. On Feburary 26, the court released him from his duties, and new counsel was substituted. The new counsel asked for and was granted time to prepare for trial, thereby causing a continuance of the trial setting to April 9, 1975. On April 8, 1975, defense counsel moved that the case be dismissed for failure of speedy trial under CrR 3.3. The motion was denied. He argued the motion during a recess of a criminal trial in another county in which he represented a defendant. Because of the unavailability of defense counsel, as a result of the criminal trial in the other county, the trial on this case did not commence until April 10, 1975. A written record of all the foregoing proceedings and the reasons therefor was agreed to and signed by both counsel and by the court.

During the first day of the trial the court was informed that one of the jurors knew one of the witnesses. Upon examination outside the presence of the remaining jurors, the juror indicated that he had not recognized the name of the witness or the name that had been given during voir dire because he had only known the witness by her first name, but that she was a waitress in a restaurant frequented by the juror and his wife. This was his only acquaintance with her. Later during the trial, the same juror again contacted the court. Upon the second examination of the juror by the court and attorneys, outside the presence of the remaining jurors, the juror indicated that the previous evening he had asked his wife, "Do you know Anna that works in Joey's, do you know her last name?" In

the ensuing conversation, it was established that the waitress/witness was the mother–in–law of the juror's nephew, who, in turn, was the brother–in–law of two of the alleged victims of three of the alleged crimes. However, the juror had little or no contact with his nephew, stating, "our paths never crossed . . ."

He had only seen the nephew's wife two or three times and "If I met her in the hallway I wouldn't know her." He had never seen the children. He indicated this relationship would not affect or influence his weighing of the evidence.

At the beginning of the second day of the trial, another juror also contacted the court. Examination of that juror, outside the presence of the remaining jurors, indicated that the testimony made him physically ill to the degree of feeling the desire to vomit. The court indicated to the juror that to dismiss him would mean a mistrial. Then the following colloquy took place:

(By defense counsel:)

Q . . . [B]ut with this fact that it is distasteful to you, and the fact that it does make you physically ill, do you think that you can still concentrate and listen to what is going on, be impartial and objective and not let this physical illness affect your powers of concentration and reasoning?

A So far I think I can.

Q Like I said, we all appreciate your coming and telling us this. Now, if at any point you feel that you can't go on, or that you catch yourself daydreaming or thinking about something else because this is distasteful to you, please let us know.

A Yes, I will.

Over defense counsel's objections, the prosecutor was allowed to ask the defendant whether he had been convicted of criminal nonsupport in Yakima County in 1965. After the court had instructed the jury, it was discovered that, although the defendant had been charged in Yakima County with criminal nonsupport, he had not been convicted. Pursuant to RCW 26.20.050(2),[1] the Yakima County

---

[1] RCW 26.20.050(2) permits the court, before trial, and with the consent of the defendant, to order the defendant to pay support.

Superior Court had released the defendant on his own recognizance and had ordered him to pay support. The court in the instant case had already instructed the jury that evidence of prior convictions could be considered solely as affecting the credibility of the defendant. Upon discovering the mistake, the court instructed the jury that this instruction was withdrawn, was to be disregarded, and that they were to disregard any evidence relating to any previous crime alleged to have been committed by the defendant:

> You are not to consider any such evidence for any purpose whatsoever.
> . . .
> You are instructed that as a matter of law the record shows the defendant was not convicted of the crime of non support.

The alleged victim of the crimes of sodomy and incest was the 13-year-old daughter of the defendant. She was called by the defense and testified as to having no sexual relations with her father. On cross-examination the prosecution, over objection, was permitted to ask, if during a visit by her and her mother to the police station, a police officer had requested her mother to have her examined by a doctor, and whether she had been so examined. Defense counsel objected on the grounds that these questions were beyond the scope of the direct examination and that the witness had no control over whether she would be taken to the doctor's office.

Four continuances or delays are important in determining whether defendant's right to speedy trial as implemented in CrR 3.3 was violated: (1) the continuance agreed upon by the parties by telephone call of January 15 changing the trial from February 10, 1975, to February 24, 1975; (2) the delay from February 24 to February 26, resulting from defense counsel's illness; (3) the continuance granted defense counsel from February 26 to April 9; and (4) the delay from April 9 to April 10 in the commencement of the

trial resulting from defense counsel's involvement in another criminal trial. With the possible exception of the continuance from February 26 to April 9, none were sought nor entered upon formal motion with the reasons set forth in the order granting each of the continuances, as required by *State v. Williams*, 85 Wn.2d 29, 530 P.2d 225 (1975). Although this is the preferable method and one strongly urged, failure to do so does not nullify the proceedings, but does provide the basis for nullification if a record of the proceedings, and the reasons therefor, is not otherwise made. *State v. Williams*, 87 Wn.2d 916, 557 P.2d 1311 (1976); *State v. Coutlee*, 15 Wn. App. 401, 550 P.2d 39 (1976); *State v. Lowrie*, 14 Wn. App. 408, 542 P.2d 128 (1975); *State v. Reid*, 13 Wn. App. 855, 537 P.2d 799 (1975). The written narrative statement agreed to by the parties and signed by them and by the court did fulfill the record requirement.

Although not based upon a motion to the court, the defendant expressly consented to the continuance or delay from February 10, 1975, to February 24, 1975. It was for his benefit, as well as the benefit of the prosecution, and the delay for the crucial days from February 18 to February 24 was necessitated by defense counsel's involvement in criminal trial in another county. Good cause for such continuance or delay did exist. The defendant knowingly waived any right to assert noncompliance with this rule for this period of time. *State v. Coutlee, supra; State v. Williams*, 14 Wn. App. 803, 545 P.2d 572 (1976).

All of the remaining delays and continuances were necessary to protect the due process rights of the defendant. Although no action was taken until 2 days after the time the case would normally have been called for trial, a pro forma gesture or request for continuance on behalf of the defendant would certainly be excused where the defendant's counsel had become suddenly ill and thus unavailable for the trial. *State v. Phillips*, 13 Wn. App. 165, 534 P.2d 119 (1975). Furthermore, the defendant is not in a

position to object to the continuance from February 26 to April 9 requested by him on the sound and reasonable ground that he needed time to prepare for trial; nor is he in a position to object to the delay from April 9 until the commencement of the trial, necessitated by defense counsel's involvement in a criminal trial in another county. Arguendo, if he is in a position to object, the court has the discretion, both inherent and asserted in the rule, to grant continuances and delays under these circumstances. *State v. Bellevue Dist. Justice Court,* 15 Wn. App. 675, 552 P.2d 693 (1976); *State v. Perkins,* 14 Wn. App. 27, 538 P.2d 829 (1975); CrR 3.3(e)(3). The court did not err in failing to grant defendant's motion to dismiss the charges for lack of speedy trial.

The defendant is entitled to a fair and unbiased trial. *State v. Beard,* 74 Wn.2d 335, 444 P.2d 651 (1968). He is not entitled to a perfect trial. A perfect trial is always sought but seldom, if ever, attained. To suggest that a perfect trial is a normal expectation is to suggest that a judge, two attorneys, 12 jurors and innumerable witnesses, all of various ages and talents are omnipotent, not subject to human error and apparently possessing iron stomachs unaffected by repulsive testimony. In stepping forward, both jurors showed their candor, honesty and dedication to the necessary objectivity of their positions. The first juror did not say that he was unable to listen objectively, rather he indicated that the listening made him ill. However, he assured the court and the attorneys that, in the event that at any time he could no longer listen impartially and objectively, he would immediately notify the court. This juror is entitled to the assumption that he was able to continue listening objectively and impartially. The second juror indicated that the slight knowledge of some of the witnesses and the distant relationship of two of them would not affect his objectivity. The judge observed and talked with both jurors. He was in a better position to measure and weigh these individuals than this court. Certainly we are not in a

position to suggest that the trial court misused its discretion in the procedure it followed and in its refusal to declare a mistrial. The possibility of prejudice cannot be based on the tenuous, speculative reasoning that the facts here would only allow. *State v. Lemieux,* 75 Wn.2d 89, 448 P.2d 943 (1968).

Unquestionably, the prosecution committed error in examining the defendant on the prior charge of nonsupport. To be reversible error, it must be prejudicial to the defendant to the extent of affecting or presumably affecting the final result of the trial. *State v. Craig,* 82 Wn.2d 777, 514 P.2d 151 (1973). After carefully reviewing the prior crime alluded to, the evidence introduced, and the court's corrective instruction, we conclude that the crime was neither so heinous nor the testimony so inflammatory that it could not be cured by corrective instruction and that, in fact, the corrective instruction did neutralize the effect thereof. This error did not endanger the defendant's fair and unbiased trial. *State v. Beard, supra.*

Having called defendant's 13–year–old daughter and she having denied incestuous relations with her father, defendant's objection is not well taken to the cross–examination eliciting the request for, and failure to obtain, a doctor's examination. Both for the impeachment purpose of testing her sincerity that she had not had relations with her father and as substantive proof that she had not had relations with her father, this cross–examination was permissible. It was within the scope of subjects opened or discussed on direct examination and thus within the discretion of the court to allow. *State v. Lampshire,* 74 Wn.2d 888, 447 P.2d 727 (1968); *State v. Riconosciuto,* 12 Wn. App. 350, 529 P.2d 1134 (1974).

Although allowed for impeachment purposes, the cross–examination was also allowable as relevant testimony intending to prove or disprove incestuous acts. Since this girl was only 13 years of age, a pelvic examination may well have proven that she was a virgin and that the act had not occurred. Also, the fact that her father and mother had not

taken her to a doctor may have tended to prove the opposite; certainly it was a fact considered by the jury. *State v. Gersvold,* 66 Wn.2d 900, 406 P.2d 318 (1965), quoted with approval in *State v. Rook,* 10 Wn. App. 484, 519 P.2d 252 (1974), and in *State v. Smith,* 11 Wn. App. 216, 521 P.2d 1197 (1974).

Quoting from *State v. Goebel,* 36 Wn.2d 367, 379, 218 P.2d 300 (1950), defendant argues that "the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it." We might also add the other most quotable quote from that case: "[W]hen the trial court is convinced that its effect would be to generate heat instead of diffusing light, . . ." *State v. Goebel, supra* at 379. Relevant testimony does not become inadmissible because it may be prejudicial. The admissibility of such testimony is determined by weighing the importance of the testimony against the irrelevant prejudicial effect thereof, *i.e.,* does it tend more to enlighten the jury or is there a greater danger of inflaming the jurors' minds? This testimony seemed clearly to fall within the former category. We do not find that the trial court abused its discretion in allowing this cross-examination.

GREEN and McINTURFF, JJ., concur.

Petition for rehearing denied June 28, 1977.

Review denied by Supreme Court December 2, 1977.