THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE DRIVER, Defendant-Appellant.

Fourth District   No. 14353

Opinion filed June 2, 1978.—Rehearing denied June 20, 1978.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

On February 4, 1976, the defendant, Eddie Driver, was charged in a two-count information with armed robbery in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 18—2). In a separate case, the defendant was also charged, along with his brother, with the murder of a police officer. Considerable publicity attended both pending cases. Defendant's motions for change of place of trial were denied.

*Voir dire* was conducted in two phases. During the first phase, court and counsel participated in the examination of 53 prospective jurors solely on the issue of pretrial publicity. Of these, 22 were excused for cause and 1 was excused by peremptory challenge. In the second phase of *voir dire*, the remaining 30 prospective jurors were questioned by the court on other issues of fitness.

At trial, Gene Davee testified that he was robbed of $140 by two black males in front of the Modest Tavern in Danville at approximately 11:25 p.m. on January 22, 1976. Several days later, Davee saw the defendant's picture in the newspaper and notified police. A lineup was conducted at

which time Davee identified the defendant as one of the perpetrators. Davee identified the defendant in court as the man who had held a knife on him and took $140 from his person.

Frank Neff testified for the State that while awaiting sentencing in the Vermilion County jail, he had a conversation with the defendant who told Neff that he had committed the robbery.

During closing argument, the prosecutor referred to the conversation between the defendant and Neff and said "Jailbirds talk to other people in jail where they have reason to feel the same kind and type; and therefore, will not be likely to be cheated on." Defendant's objection to the characterization of him as a "jailbird" was overruled. Defendant's subsequent motion for a mistrial on the basis of inflammatory statements made during argument by the State was also denied.

The jury found the defendant guilty of robbery. The defendant was subsequently sentenced to a term of 2 to 6 years.

■■■ Defendant first contends that the trial court abused its discretion in denying his motions for a change of place of trial because pretrial publicity prejudicially linked the murder and armed robbery charges against him so as to prevent the selection in this case of a jury untainted by bias and preconceived notions of his guilt. According to the exhibits presented with defendant's motions for change of place of trial, approximately 42 newspaper articles appeared between January 23, 1976, the day after the officer was beaten, and May 6, 1976, the date jury selection in the instant case was reported. While many of the articles referred to defendant's involvement in both cases, a close examination of the series of articles reveals that they were generally routine factual reports of the progress of the two cases and of related community reaction. In assessing the impact of pretrial publicity, courts have stated that the examination of prospective jurors on *voir dire* is probably the most valuable method of ascertaining partiality or indifference among persons summoned as jurors. (*People v. Torres* (1973), 54 Ill. 2d 384, 388, 297 N.E.2d 142, 145; *People v. Myers* (1974), 20 Ill. App. 3d 83, 312 N.E.2d 741.) In *People v. Williams* (1968), 40 Ill. 2d 522, 531-32, 240 N.E.2d 645, *cert. denied* (1969), 393 U.S. 1123, 22 L. Ed. 2d 129, 89 S. Ct. 1004, the Illinois Supreme Court stated that "[j]urors need not be totally ignorant of the facts and issues involved. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." This language in *Williams* is based upon the standard set forth in *Irvin v. Dowd* (1961), 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639. In the instant case, it is clear that a more rigorous standard than that required by *Williams* was applied. During the first phase of *voir dire*, the court excused for cause any prospective jurors who had

formed an opinion that defendant was guilty in either incident even though that juror stated he could set his opinion aside and judge the defendant only on the evidence presented in court. Those 12 jurors finally selected stated during *voir dire* that they had never formed an opinion as to defendant's guilt in either incident. In view of the more rigorous standard used to screen jurors, it is clear that defendant has not been denied a fair trial by an impartial jury and the trial court's denial of defendant's motion for change of place of trial was not an abuse of discretion.

■■ Secondly, defendant contends that the trial court erred in denying defendant's motions to excuse two veniremen for cause on the grounds that both had made inconsistent statements during *voir dire* concerning defendant's guilt in either the murder or armed robbery case. It is clear from the record and from the context of these allegedly inconsistent statements that neither prospective juror had indicated a fixed opinion of the defendant's guilt. Indeed, both of these jurors repeatedly stated under questioning by court and counsel that neither had formed an opinion nor made a judgment as to defendant's guilt. Further, both prospective jurors indicated that they would be capable of rendering a verdict based solely on in-court evidence as required by *Williams*. Accordingly, the trial court's denial of defendant's motions to excuse these two veniremen for cause was not error.

■■ ■ Thirdly, defendant argues that the trial court improperly prevented him from cross-examining Davee as to the amount of alcohol Davee consumed throughout the day of the robbery. Such an inquiry, defendant argues, could have cast possible doubt on Davee's ability to recall the incident or to identify the defendant as one of the perpetrators. Defendant contends that Davee had testified at a pretrial motion hearing that he had approximately 10 to 12 beers during the course of the day and up to the time of the alleged robbery. However, the record clearly shows that Davee's statement about consuming 10 to 12 beers a day was in response to a question concerning his occasional drinking habits and not concerning his actual consumption on the day of the robbery. There does not appear to be any basis for defendant's attempt to impeach Davee as to possible intoxication because of alcoholic consumption between noon and approximately 9 p.m. on the day of the robbery. Further, the court freely allowed the defendant to question Davee about his drinking at several bars on the night of the robbery so as to expose any weakness in his testimony caused by his drinking. A reviewing court will generally not interfere with a trial court's ruling concerning the latitude allowable on cross-examination of a witness unless that ruling was clearly abusive and resulted in manifest prejudice to the defendant. (*People v. Nester* (1976), 40 Ill. App. 3d 735, 738, 353 N.E.2d 23, 25.) In the absence of any basis

upon which to impeach Davee as to possible intoxication throughout the day of the robbery, the ruling of the trial court on the scope of Davee's cross-examination was not an abuse of discretion resulting in any prejudice to the defendant.

■■ Fourthly, defendant contends that he was denied a fair trial because of the prosecutor's characterization of him as a "jailbird" during closing argument. The record indicates that the prosecutor did not call the defendant a "jailbird" directly but used the term in reference to Neff's testimony of a conversation in the jail between himself and the defendant who told Neff about the robbery. It is evident from the context of the prosecutor's comment that he was using the term "jailbirds" in a broad sense to describe what he felt was a plausible tendency of inmates in penal confinement to confide in each other because of similar positions and backgrounds and because they generally would have no fear of repercussions from the extensions of such confidences. Clearly, the use by the prosecutor of the term "jailbirds" even indirectly during closing argument is not to be admired because of potential prejudice to the accused. However, as the supreme court stated in *People v. Berry* (1960), 18 Ill. 2d 453, 458, 165 N.E.2d 257, 259: "Where it appears that improper remarks do not constitute a material factor in the conviction, or that they are of such a minor character that prejudice to defendant is not their probable result, the verdict will not be disturbed." Here, although use of the term "jailbirds" may have reflected unfavorably on the defendant, its use cannot be said to constitute a material factor in defendant's conviction. We regard it as harmless error.

■■ Finally, defendant contends that he was not proved guilty of robbery beyond a reasonable doubt. We note that the testimony of a single identification witness is sufficient to support a conviction if the witness viewed the accused under circumstances permitting a positive identification to be made. (*People v. Jones* (1975), 60 Ill. 2d 300, 307, 325 N.E.2d 601, 605; *People v. Hamilton* (1977), 54 Ill. App. 3d 215, 369 N.E.2d 377.) Further, the sufficiency of identification testimony is a question of fact for the jury, and the jury's determination will not be disturbed on review unless the testimony is so unsatisfactory as to leave a reasonable doubt of an accused's guilt. (*People v. Williams* (1972), 52 Ill. 2d 455, 464, 288 N.E.2d 406.) In the instant case, Davee made a positive in-court identification and testified that the lighting conditions at the time of the robbery, when the robber's face was one foot from his, sufficiently enabled him to distinguish defendant's facial features. Several days after the robbery, Davee recognized defendant's picture in the newspaper and subsequently identified defendant in a lineup conducted by police. Since it is clear from Davee's testimony that he had an adequate opportunity to

make a positive identification of the defendant, Davee's testimony is sufficient to support defendant's conviction.

Accordingly, the judgment of the Circuit Court of Vermilion County is affirmed.

Affirmed.

GREEN, P. J., and CRAVEN, J., concur.