Charles E. GOODMAN, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 5091.

Supreme Court of Wyoming.

Oct. 18, 1979.

Rehearing Denied Nov. 9, 1979.

Gary L. Shockey, Casper, signed the brief and appeared in oral argument on behalf of the appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Sandra K. Dunn, Law Clerk, signed the brief on behalf of appellee. Lawrence J. Wolfe, senior law student and legal intern, appeared in oral argument on its behalf.

Before RAPER, C. J., and McCLIN-TOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

The appellant-defendant challenges his conviction for manslaughter under § 6–4–107, W.S.1977, claiming: (1) the trial court erred in admitting evidence of a prior shooting incident which involved the appellant; (2) the appellant is placed twice in jeopardy because he is being punished twice for the same act; (3) the district court erred in refusing appellant's instructions on the grades of manslaughter and the relationship of that crime to the defenses of self-defense and accident; and (4) the district court erred in not granting a mistrial when the prosecutor mentioned in his closing argument that appellant had been residing in the penitentiary.

We will affirm.

The facts of this case are well set out in *Goodman v. State,* Wyo.1977, 573 P.2d 400. In that opinion this court reversed appellant's conviction for first degree murder and remanded the matter for a new trial. Appellant's conviction for killing an unborn child by assault on the mother was affirmed. A new trial was held beginning on September 18, 1978, and on September 29, 1978, the jury returned a verdict finding the appellant guilty of manslaughter. The only new factor introduced in the second trial which is of significance here is that the State introduced evidence of a 1967 incident wherein appellant also shot a girl friend.

Appellant asserts that the trial court committed reversible error by allowing the prosecution to question appellant concerning an incident which occurred some eight years before the shooting involved in this case. That cross-examination revealed that in June of 1967 appellant had been involved in shooting and wounding of a girl friend at which time he took her to the police station in order to obtain medical assistance.

At trial, and in this appeal, the State asserts that the incident was admissible under Rule 404(b), W.R.E.:

"(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of * * * *intent,* * * * *knowledge,* * * * or absence of mistake or accident.*"

The State presented the evidence on the theory that it tended to prove the appellant's intent under the circumstances of this case and refuted his claim of accident because, when he was confronted with nearly the same set of circumstances on the earlier occasion, he called the police for assistance, whereas here he did not.

■ Appellant asserts that the evidence was not admissible under Rule 404(b), W.R.E. because its sole purpose was to demonstrate the appellant's character. Further, appellant asserts that under Rule 403, W.R.E.[1] the prejudicial nature of the testimony outweighed its probative value and therefore should not have been admitted even if it was admissible as relevant under one of the exceptions to Rule 404(b). The argument presented by appellant appears to misapprehend the scope of Rule 404(b), He seems to view that rule as being somehow delimited by Rule 609, W.R.E.[2] The evi-

1. Rule 403, W.R.E.:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

2. The pertinent portion of Rule 609, W.R.E.:

"(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

"(b) *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten (10) years has elapsed since

dence obviously was not of the sort contemplated by Rule 609 since it was[3] not a conviction at all. However, the matter raised by the prosecution was evidence of an "act." A prior act of the accused need not be criminal in character in order to be relevant for purposes of Rule 404(b). *United States v. Senak,* 7th Cir. 1975, 527 F.2d 129, 143, cert. den. 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758; 2 Louisell and Mueller, Federal Evidence, § 140, p. 121 (1978). To the extent the "act" involved here had undertones of criminality, those did not affect its relevancy but rather were to be considered in determining whether prejudice outweighed probative value. Many shootings are not criminal.

We consider the evidence to have been relevant[4] in the element of intent which the State was obliged to prove in order to establish murder. The appellant claimed the shooting was an accident. Under the circumstances of this "accident" the appellant gathered up his dog and the rifle which inflicted the fatal wound, drove around Casper cashing large checks, and made no report whatever to authorities. Indeed, it could be readily inferred from his behavior that he intended to flee. Yet eight years previous, when confronted with a very similar shooting, appellant promptly reported the matter to the proper authorities and sought aid for the accident victim. We consider this to be competent evidence from which a jury could properly infer that the latter shooting was not an accident, otherwise he would have reported it as he did in

the previous incident. An important part of the trial court's decision to admit such evidence will be based on whether the specific issue to which the evidence is directed is actually being contested. 2 Weinstein's Evidence, ¶ 404[08], p. 404–44 (1978). Here the evidence was very well focused upon the major issue that was placed before the jury. The prior experience demonstrated that appellant knew what to do and yet he failed to do what he previously had done. As a matter of common sense and human nature, a person does not leave an accident victim dead or injured without making a report or calling for assistance.[5] It follows that where a person has first-hand experience with such a situation and in the past demonstrated those qualities of common sense, human nature and decency described, the failure to report to authorities or otherwise render aid or assistance carries with it a possible inference of wrongdoing rather than innocence to be included along with all the facts and circumstances surrounding the occurrence.

The evidence was probative of appellant's intent at the time the shooting took place. In addition, it served to rebut appellant's claim of accident. Evidence such as that presented here is commonly used for just those purposes. In 2 Louisell and Mueller, Federal Evidence, § 140, pp. 126–128, it is said:

"3. *Intent.*

"Sometimes loosely defined as 'merely the absence of accident,' intent in crimi-

---

the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten (10) years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

3. One commentator suggests a court should consider Rule 609 when exercising his discretion under Rule 404(b). Rule 609 may provide

some guidance, but we would not go so far as to hold that Rule 609 *must* be weighed in conjunction with Rule 404(b). 2 Weinstein's Evidence, ¶ 404[09], p. 404–48 (1978).

4. Rule 401, W.R.E.:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

5. We view as inconsequential that appellant here knew the accident victim was dead, while in the earlier accident, the victim was alive when he sought help from authorities. Normal human decency demanded his attention.

nal cases is often an element of the charged crime, which clearly encompasses both the desire to achieve a particular end and the knowledge that such an end is the almost-certain result of an act; no doubt intent has many more specific meanings, depending upon the context and the definition of the crime charged. *Other acts* by the accused, including other crimes, *may be received to prove intent on the common-sense theory that the more often a person acts in a particular way and achieves a particular result, the more likely it is that he intended the result.* 'Intent' is often lumped together with 'knowledge,' although usually intent signifies something more than knowledge. Cases approving, as well as cases disapproving, the receipt of prior crimes evidence to show intent are collected in the margin. To be truly probative, *the prior crimes [acts] must be similar to the crime charged."* (Emphasis and bracketed material added and footnotes omitted.)

See also, 2 Weinstein's Evidence, ¶ 404[09], p. 404–50. To paraphrase the language quoted above and bring its full meaning to bear in the case now before us, it would be said that, the more often a person has experienced a given type of situation and reacted in a reasonable manner, the more likely it is that an unreasonable reaction connotes some guilty intent or knowledge.

Another purpose for which such evidence is appropriate is:

"5. *Knowledge.*

" 'As distinguished from intent, *knowledge signifies an awareness.*' Though frequently mentioned along with intent in cases where prior crimes evidence has been received, knowledge connotes something less, and is important as a separate

and distinct concept principally in connection with crimes involving dealings in stolen property, illegal transportation or importation of aliens or contraband, the utterance or passing of forged instruments or possession or passing of counterfeit notes. Prior crimes evidence seems also to be received time and again to prove 'knowledge or intent' in narcotics cases. It has been received on the knowledge issue in a variety of other cases. *Like intent, knowledge is often thought to be the opposite, or negation, of mistake, accident, or a claimed innocent involvement in criminal acts.* Sometimes prior crimes evidence bears not only on knowledge, but upon defendant's veracity, and it may come in to impeach by contradiction a defendant's testimonial assertion of lack of knowledge concerning elements of the crime charged against him. Wigmore summed up the relevance of prior acts to prove knowledge thus: '*The other act will probably have resulted in some sort of warning or knowledge; this warning or knowledge must probably have led to the knowledge in question.*' There have been occasional reversals where prior crimes evidence has been received to prove knowledge." 2 Louisell and Mueller, Federal Practice, § 140, pp. 133–137 (1978); and see 2 Weinstein's Evidence, ¶ 404[09], pp. 404–51 to 404–53.

The evidence here showed appellant had a unique knowledge of the circumstances of accidental shootings. That he failed to make use of his knowledge belied his claim of accident. Although this case poses a distinctive set of factual circumstances to which it is difficult to draw parallels, we consider the following cases to shed some light on the case at bar.[6] *Halliburton v.*

---

**6.** Our analysis is one that focuses primarily upon the singular facts of the case at bar. We were cited no case "in point" by the parties nor did we find one in our own search. In most cases examined the previous acts sought to be introduced as evidence were criminal, whereas here the previous act was one demonstrating innocence and not within a pattern of crime. Because of the innocence of the past act, its admissibility is less questionable. The cited cases are obviously not directly in point, but

they were of assistance in analyzing the facts of *this* case. As stated by one commentator, " * * * the question of when evidence of a particular criminal act may be admitted is so perplexing that the cases sometimes seem as numerous 'as the sands of the sea' and often cannot be reconciled." 2 Weinstein's Evidence, ¶ 404[08], p. 404–40 (1978). We are likewise unable to verbalize a precise formula but trust to a common-sense approach to the admission of such evidence. (See fn. 7, infra.)

*State,* Tex.Cr.App.1975, 528 S.W.2d 216; *People v. Vail,* 1973, 49 Mich.App. 578, 212 N.W.2d 268, 276 (reversed on other grounds, *People v. Vail,* 1975, 393 Mich. 460, 227 N.W.2d 535); *United States v. Woods,* 4th Cir. 1973, 484 F.2d 127; and see generally, West's Digest System, Criminal Law, Key Numbers 369.2(4), 369.3, and 371(4).

The probative value of the evidence was adequately demonstrated. And the need for such evidence is also apparent. The State had to rely solely upon circumstantial evidence in this first degree murder prosecution. Their burden of proof was a heavy one. Appellant defended on the theory of accident, and he and the victim were the only ones present at the crime scene. The

State had to rebut appellant's claim of accident and this peculiar crack in the armor of appellant's past—and his defense—was fair game for the prosecution once appellant took the stand. 2 Louisell and Mueller, Federal Practice, § 140, pp. 116–117. The two occurrences are so similar and the former so inconsistent with his behavior in the latter that its relevance was clear. This is all to suggest that the probative value did outweigh the obvious prejudicial effect of the evidence, particularly since the previous act was of such purity of motive that a grand jury refused to indict. We are not convinced that it can rise to the level of an abuse of the trial judge's discretion to have admitted such evidence.[7] 2 Louisell and

7. We commend the following approach:
   "As the foregoing discussion should indicate, it is virtually impossible to draw precise guidelines concerning the admissibility of evidence of other crimes [acts]. Generalizations have an initial appearance of solidity but crumble on close analysis. Details of other cases, though suggestive of possible techniques of advocacy, are not very helpful as precedents since the same combination of factors is unlikely to recur. In the final analysis, admissibility will depend on the individual judge's evaluation of the justification for the rule as an appropriate device to protect accused persons. Adoption of Rule 104 suggests that the policy should be embraced in good faith by prosecutors and judges; the onus of showing prejudice overbalanced by need and good faith should rest on the prosecutor. In this connection, the conclusion of a recent article containing a detailed analysis of cases dealing with other crimes evidence is well-worth considering:
   "First, as a practical matter there would seem to be little hope that the exceptions to the exclusionary rule will be either more precisely defined than they are now or that they will be abandoned. * * * Second, it has been suggested that this kind of dynamite might well lie outside the normal broad scope of judicial discretion. What is here proposed is admittedly a compromise, but hopefully a workable one. It is suggested that such evidence be ruled inadmissible unless it can be shown by the prosecution that it is essential to the proof of an element of the crime allegedly committed by the accused and, indeed, that its use in this sense not be merely cumulative. This rule of necessity has been adopted or hinted at before in the authorities. It admittedly involves some degree of judicial discretion, but a much narrower degree than has been employed heretofore, and the general rule will be one of exclusion. The rule

proposed will not solve all of the problems confronting an accused in this area, but it will bring him substantially closer to Cardozo's ideal that the defendant before the bar of justice start life anew; it will lend more meaning to the presumption of innocence now reduced statistically to something approaching a cliche, and it will render more than lip service to the currently unique but significant policies undergirding a privilege [against self-incrimination] that analytical arguments cannot cast aside. As to the latter, tradition plays a part, and it may well be true that the privilege expresses in part a step toward civilization that the English language is not well-equipped to describe with precision.
   "Appellate courts recognize that 'The trial judge must have wide discretion to determine whether the probative value of the evidence is outweighed by its prejudicial character.' *Thus the parties must be prepared to convince the trial judge at the time the evidence is offered. Since both sides will probably be aware of the possibility that the issue will arise, it should be adequately briefed before the judge must rule. More important than lists of cases in such a brief is the detailed analysis of the facts to show why the proof of other crimes is needed, why its use may be prejudicial and how some compromise or limitation may protect both parties. Holding arguments back for the appeal is dangerous and unsound. Moreover, in considering the matter the Appellate Court might well take into account the situation as it was presented to the trial judge, rather than the more fine spun analysis presented on appeal.*" (Emphasis and bracketed material added.) 2 Weinstein's Evidence, ¶ 404[10], pp. 404–73 to 404–74.

Mueller, Federal Evidence, § 125, pp. 10–15. As presented to the jury, this previous episode was not shocking, sensational, emotional or evocative of hostility, sympathy or punitive impulses, 2 Louisell and Mueller, Federal Evidence, § 126, pp. 16–35. It was clear that appellant was not indicted for a crime following the past incident. The State's cross-examination accepted that the earlier incident was an accident and there was no suggestion made to the contrary. The only suggestion arising from the cross-examination and closing argument was that the appellant's actions at the earlier incident were consistent with a claim of accident and that they were not in the case at bar. We cannot condemn a prosecutor for eliciting past acts of blamelessness, under the circumstances of this case. The "other * * * acts" were evidence admissible to prove "an absence of * * * accident" within the exact language of Rule 404(b), W.R.E.

■ Appellant asserts that the previous shooting incident was too remote. Under the circumstances we do not agree. The lesson to be learned from such an accidental shooting is one which common sense tells us is not easily forgotten—certainly not in only eight years. Moreover, questions concerning remoteness of evidence are left to the sound discretion of the trial court and subject to challenge and disturbance only for clear abuse. *Peterson v. State,* Wyo. 1978, 586 P.2d 144, 154. No time limit is set by Rule 404(b) which would preclude evidence of the other act here admitted. For the reasons outlined above we do not see any abuse of discretion.

■ In this case no limiting instruction with respect to the challenged testimony of past conduct was given and none was re-quested by appellant's counsel. Indeed, appellant did not want a limiting instruction. In part this was because appellant could think of no appropriate instruction to give to the jury that would not exacerbate the situation.[8] As a general rule there must be a limiting instruction given if it is requested, *Channel v. State,* Wyo.1979, 592 P.2d 1145; Rule 105, W.R.E. It is suggested by some authorities that under certain circumstances such an instruction should be given even if not requested. 2 Louisell and Mueller, Federal Evidence, § 138, p. 100. However, under the circumstances presented here where the trial court was open to giving such an instruction and the appellant refused to proffer or request one and did not want such an instruction, we decline to further address the question of whether the failure to give an instruction without a request would be reversible error under the same or similar circumstances.

During oral argument defendant's counsel entreated the applicability of *Kwallek v. State,* Wyo.1979, 596 P.2d 1372, recently decided by this court. That case dealt with the admissibility of evidence of past conduct under Rule 404(a), W.R.E. dealing with character traits. The case before us pertains to the applicability of Rule 404(b), dealing with the applicability of other acts, to disprove accident. While 404(b) was discussed in *Kwallek,* that case has no applicability here.

■ In summary, there was no error in admitting testimony about the earlier shooting incident under the distinctive circumstances of this case.

■ Appellant claims that he has been placed twice in jeopardy for the same act.[9] He urges that there is a merger of the offenses of manslaughter [10] and killing an

8. The apparent reason appellant did not ask for an instruction is that in his judgment for tactical reasons he thought it disadvantageous to draw additional attention to this testimony.

9. The constitutional provisions are: Wyoming Constitution, §§ 6 and 11, Art. I; United States Constitution, Amendments 5 and 14.

10. Section 6–4–107, W.S.1977:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty (20) years."

unborn child by assault and battery upon a pregnant woman,[11] and that he may not be punished twice for the same offense. His position is that because sentence had already been imposed for the killing of the unborn child, another punishment may not now be imposed for manslaughter. If the offenses charged are separate and distinct either with respect to statutory definition, or because they grow out of different transactions and different evidence is needed to prove each, the constitutional inhibition against double jeopardy is not applicable and, so long as the offenses charged are not factually inconsistent, a defendant may be found guilty and judgment and sentence entered thereon may be had as to each of the offenses charged. *Jackson v. State,* Wyo.1974, 522 P.2d 1356, 1359; *Goldsmith v. Cheney,* Wyo.1970, 468 P.2d 813, 815. Two or more distinct offenses may emanate from the same transaction or act, and the rule that a person cannot be put twice in jeopardy for the same offense has no application where two separate and distinct crimes are committed by one and the same act. *People v. Hairston,* 1970, 46 Ill.2d 348, 263 N.E.2d 840, 847, cert. den. 402 U.S. 972, 91 S.Ct. 1658, 29 L.Ed.2d 136. Where two statutes are intended to suppress different evils, the acquittal or conviction on one will not prevent prosecution of the other. *Decker v. State,* 1971, 251 Ark. 28, 471 S.W.2d 343, 344; *State v. Ahuna,* 1970, 52 Haw. 321, 474 P.2d 704, 707; and see generally, West's Digest System, Criminal Law, Key Number 195(1).

We hold that § 6–4–107 and § 6–4–507, W.S.1977, are statutes which are separate and distinct and are intended to suppress different evils. The elements of the former are considerably different from the elements of the latter. A defendant may be prosecuted both for the act of killing an unborn child during an assault and battery on a pregnant woman and for the assault and battery on the pregnant woman (or, as here, her killing) without violating the rule against double jeopardy. It is not impermissible to have appellant serve sentences both for the killing of the unborn child and the killing of Donna Poole. The killing of the unborn child was a crime against that unborn child and the killing of Donna Poole was a crime against her. *People v. Apodaca,* 1978, 76 Cal.App.3d 479, 142 Cal.Rptr. 830, 840; *State v. Shaw,* Fla.App. 1969, 219 So.2d 49, 50–51. As a general proposition, with few exceptions, in crimes against the person there are as many offenses as individuals affected though arising out of only one act. *Vigil v. State,* Wyo.1977, 563 P.2d 1344. Appellant was not placed twice in jeopardy for the same offense.

Appellant protests that the district court erred in refusing a collection of six instructions with respect to the crime of manslaughter.[12]

---

(This statute was revised in 1979 after the proceedings in this case had come to a close.)

11. Section 6–4–507, W.S.1977:

"Whoever unlawfully kills an unborn child, or causes a miscarriage, abortion or premature expulsion of a fetus, by any assault or assault and battery willfully committed upon a pregnant woman, knowing her condition, is guilty of a felony and shall be imprisoned in the penitentiary not more than fourteen (14) years."

12. Of these refused instructions only the refusals of "R", "T", and "AA" were objected to so those are the only ones included in this footnote which we will consider. The others were not preserved for review. *Montez v. State,* Wyo.1977, 573 P.2d 34; *State v. Bruner,* 1958, 78 Wyo. 111, 319 P.2d 863.

*"INSTRUCTION R*

"YOU ARE INSTRUCTED that you may not convict the Defendant of voluntary manslaughter, unless and until the prosecution proves beyond a reasonable doubt that the death of the deceased was the result of the Defendant acting (1) voluntarily, and (2) upon a sudden heat of passion.

"In order to find that the Defendant acted voluntarily, you must find that the Defendant acted purposely, with a design, through a free exercise of will. That is, you must find that the Defendant acted intentionally and with design.

" 'Heat of passion', as the term is used in our law, means such passion as naturally would be aroused in the mind of an ordinarily reasonable person of average disposition in the same or similar circumstances as those in question, and such as would cause him to act rashly, without reflection and deliberation,

■ It is an axiom of our criminal jurisprudence of long standing that when the principles of a requested instruction, even if correct, have been properly and sufficiently covered by other instructions, its refusal is not error. *Cullin v. State,* Wyo.1977, 565 P.2d 445, 453. The instructions given by the district court covered the exact same ground in only slightly different and only slightly abbreviated manner:

"INSTRUCTION NO. 8

" * * *

"If you find the Defendant not guilty of the crime of murder in the second degree, it would then be your duty to further consider and determine,

"3. Whether the Defendant is guilty or not guilty of the crime of manslaughter. Manslaughter is defined as the unlawful killing of a human being, unless it is excusable, without malice, either voluntarily, upon a sudden heat of passion, or involuntarily, by any culpable neglect or criminal carelessness. Unless every one of the elements for voluntary manslaughter or involuntary manslaughter is present in the evidence and proved be-

and from passion rather than from judgment. To apply the proper standard, you should ask and answer whether or not the ordinarily reaosnable [sic] person, if placed in a same position in which the Defendant found himself, and if knowing what the Defendant then knew, would have been thrown into a heat of passion."

*"INSTRUCTION T*

"YOU ARE INSTRUCTED that you may not convict the Defendant of involuntary manslaughter, unless and until the prosecution proves beyond a reasonable doubt that the death of the deceased was the result of the commission of some unlawful act, or by reason of the Defendant's culpable neglect or criminal carelessness. The terms 'culpable neglect' and 'Criminal carelessness' having the same meaning in the eyes of the law. These terms require the prosecution to prove much more than ordinary negligence. The prosecution must prove, beyond a reasonable doubt, that the actions of the Defendant were of a gross or flagrant character, such as would show wantonness or recklessness, or would evince a reckless disregard of human life or the safety of others, of indifference to consequences, that is the equivalent to criminal intent.

yond a reasonable doubt, the Defendant cannot be convicted of manslaughter.

* * *"

"INSTRUCTION NO. 9

"YOU ARE INSTRUCTED that criminal responsibility does not attach to all killings of a human being. In some instances, such killings are excusable. One such instance is where the death of a human being is the result of accident.

"An 'accident', as the term is commonly understood, is an occurrence which is not intended. If a killing is accidental, then the essential element of intention is necessarily excluded. If the essential element of intention to kill is excluded, the defendant cannot be found guilty of murder in the first degree, or of murder in the second degree, or of voluntary manslaughter.

"An accident does not, however, excuse the defendant of responsibility for manslaughter if the accident resulted from the commission of some unlawful act by the defendant, or that the accident resulted from his culpable neglect or criminal carelessness."

"In a case such as this one, where the defense asserts that the Defendant had reasonable grounds to believe that another will unlawfully attack him, and that the anticipated attack will be of such character as to endanger his life or limb, or to cause him serious bodily harm, you are instructed that the Defendant would not be guilty of culpable negligence, as defined above, if you find that he had attempted to disarm his assailant for the purpose of resisting such attack. It is for you to determine whether the Defendant had such reasonable grounds."

*"INSTRUCTION AA*

"YOU ARE INSTRUCTED that an accident also excuses the accused from liability for involuntary manslaughter unless the prosecution proves, beyond a reasonable doubt, that the accident resulted from the commission of some unlawful act by the Defendant or that the accident resulted from the culpable neglect or criminal carelessness of the accused. Unless you find, beyond a reasonable doubt, that the defendant acted unlawfully or with culpable neglect or criminal carelessness, then you should also find him not guilty of involuntary manslaughter."

## "INSTRUCTION NO. 10

"YOU ARE INSTRUCTED that the taking of a human life by accident, misadventure, or misfortune, while in the performance of a lawful act, exercising the due care, and without harmful intent, is excusable, but all such facts must concur and the absence of any one of them will involve guilt. The homicide must have been committed while the accused was engaged in doing a lawful act, and by lawful means, with ordinary and reasonable care, and without any unlawful or harmful intent, in order for the taking of a human life to be excused as an accident."

## "INSTRUCTION NO. 11

"YOU ARE INSTRUCTED that the terms culpable neglect and criminal carelessness are synonymous and mean the failure to exercise any care, or the exercise of so little care that you are justified in believing that the person whose conduct is involved was wholly indifferent to the consequences of his conduct and to the welfare of others."

## "INSTRUCTION NO. 12

"The heat of passion which will reduce the homicide to manslaughter must be such a passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same circumstances. A defendant is not permitted to set up his own standard of conduct and to justify or excuse himself because his passions were aroused unless the circumstances in which he was placed and the facts that confronted him were such as also would have aroused the passion of the ordinarily reasonable man faced with the same situation. The basic inquiry is whether or not, at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment."

## "INSTRUCTION NO. 17

"YOU ARE INSTRUCTED that the defendant, although under no obligation to do so, has the right to present his theory of the case to the jury.

"The defendant's theory of this involves accident and lack of intention on the part of the defendant. The law relating to this theory is set forth more fully in other instructions."

## "INSTRUCTION NO. 20

"YOU ARE INSTRUCTED that it is lawful for a person who is being assaulted to defend himself from attack if he has reasonable grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so he may use all force and means which he believes to be necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent."

These instructions are correct and complete in their statement of the pertinent law. Nothing is omitted from them, of any consequence whatever, that is contained in the appellant's proposed instructions, the refusals of which were objected to by appellant in an acceptable manner so as to raise issues with respect to their refusal.

Appellant asserts that the district court erred in not granting a mistrial when the prosecution, in closing argument made a comment to the effect that appellant was residing in the penitentiary: " * * * after three years now, sitting in the penitentiary or sitting and waiting for this trial * * *." Appellant made no objection at the time the statement was made. Instead, he moved for a mistrial in chambers following the close of the State's argument. Objection should be made at the time of allegedly prejudicial comments so that the trial court will have an opportunity to take corrective action. *Oldham v. State,* Wyo. 1975, 534 P.2d 107; *Bennett v. State,* Wyo. 1963, 377 P.2d 634; West's Digest System,

Criminal Law, Key Number 728(3). In chambers, the district judge offered to admonish the jury to disregard the statement. Appellant's counsel did not want such an admonition and so none was given. Obviously the appellant's counsel did not want to attract more attention to the statement.

Whether remarks of State's attorney in criminal matters are improper rests largely in the sound discretion of the trial court. *Boyd v. State,* Wyo.1974, 528 P.2d 287, cert. den. 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102; *Dickey v. State,* Wyo. 1968, 444 P.2d 373. Appellant cites no authority to the effect that such a passing comment, ill-advised as it might be, is so prejudicial that it cannot be cured short of a mistrial in the trial court or a reversal for new trial here. See, *People v. Driver,* 1978, 60 Ill.App.3d 381, 17 Ill.Dec. 657, 376 N.E.2d 803, 806–807 (where prosecutor referred to defendant as "jailbird," not considered so prejudicial as to require reversal). Moreover, reversal and remand for a new trial because of prosecutorial misconduct will not be ordered as punishment for a prosecutor's misdeeds but only because such misdeeds deny a *fair trial. Jones v. State,* Wyo.1978, 580 P.2d 1150.[13] We also note that the prosecutor was fair and above-board throughout this trial. His tongue obviously slipped and he tried to cover it up as best he could as can be seen from the record. He argued strenuously and convincingly that the comment was inadvertent and that he did not perceive the prejudice as it slid off his tongue, since it was established by the

defendant himself on direct examination that appellant was residing in the Natrona County Jail. Thus, the confinement of the defendant was already before the jury at the defendant's own instance. The prosecutor pointed out at the in-chambers conference on this matter that he immediately backed away from the comment and made no other mention of it. Prejudicial error because of argument by the prosecutor will not be assumed in the absence of bad faith on his part. *Dickey v. State,* supra. Under all the circumstances here, there was no prejudicial error in the comment.

Affirmed.

ROSE, Justice, dissenting, with whom McCLINTOCK, Justice, joins.

In discussing the admissibility of the prior shooting incident by the appellant, the majority analyzes the admissibility under both Rules 403 and 404(b), W.R.E.

The majority first addresses Rule 404(b) and argues that the evidence of a prior and unrelated shooting was admissible to show intent and lack of mistake in the shooting which is the subject of this appeal. The argument is that the experience of the prior incident, in which a person was killed, gave the appellant a thorough knowledge of what one is supposed to do after accidentally shooting someone. From this the majority reasons that the appellant's flight after the second shooting, despite his expertise about what to do after an accidental shooting, belies his claim of accident with respect to the second shooting and thus causes the

---

13. In *Peterson v. State,* Wyo.1978, 586 P.2d 144, 155–156, this court said:

"* * * As a general proposition, '* * * [a] fair trial, as we understand the expression, means simply a trial that is just; a trial in which the accused is given the benefit of all the safeguards provided by the Constitution and laws and one in which evenhanded justice is dispensed. * * *' *State v. Jones,* 1967, 251 La. 431, 204 So.2d 775, 778–779. However, '* * * [t]he Constitution does not * * * guarantee every defendant a perfect trial. The rights vouchsafed are practical, reasonable rights rather than ideal concepts of communication, and even these pragmatic rights may not be exercised without limit. * * *' *Ferrell v. Es-*

*telle,* 5th Cir. 1978, 568 F.2d 1128, 1131. See also, *State v. Colbert,* 1977, 17 Wash.App. 658, 564 P.2d 1182, 1187; *State v. Guffey,* 1970, 205 Kan. 9, 468 P.2d 254, 268; *Opie v. Meacham,* D.Wyo.1968, 293 F.Supp. 647, aff'd. 419 F.2d 465, cert. denied 399 U.S. 927, 90 S.Ct. 2239, 26 L.Ed.2d 793. In addition, any alleged misconduct on the part of the prosecution herein would not constitute reversible error unless it were shown to have resulted in substantial prejudice to the accused. *People v. White,* 1977, 52 Ill.App.3d 517, 10 Ill.Dec. 274, 367 N.E.2d 727, 731; *Hays v. State,* Wyo.1974, 522 P.2d 1004, a situation which defendant has not fulfilled his burden of proving."

testimony to be admissible under the exceptions outlined in Rule 404(b). I am unable to agree with this analysis.

I agree that the defendant's flight had probative value, but evidence of that flight was admissible without bringing up the earlier shooting. The majority states:

"  .   .   .  As a matter of common sense and human nature, a person does not leave an accident victim dead or injured without making a report or calling for assistance.   .   .   ."

Assuming, arguendo, this observation to be sound, it has the effect of undercutting the rationale of the majority for allowing evidence of the earlier shooting. I would urge that if it is a matter of common knowledge that one is supposed to summon medical or police personnel upon an accidental shooting, as the majority contends, then it is fatuous to argue that a prior shooting should be admissible to show that the defendant knew what one was supposed to do when an accidental shooting occurred.

In addition, the two shooting incidents were dissimilar. The victim of the first shooting, although she ultimately died, survived long enough to make manifest the urgent need for medical help. In the shooting at bar, the appellant testified that the victim died immediately and thus there was no need to obtain medical help.

Since I am unable to accept the majority's rationale that the prior shooting had probative value in proving intent or lack of mistake, I fail to see how the prior shooting was admissible under Rule 404(b). In addition, since I am not persuaded that the prior shooting had probative value, I have no difficulty in concluding that the trial judge abused his discretion in determining, under Rule 403, that the probative value of the fact of the prior shooting was not outweighed by the danger of unfair prejudice.

The danger of prejudice was that the jury would punish the appellant for the prior shooting even if it had doubts about the guilt of the appellant with respect to the crime for which he was standing trial. Since I am unconvinced that the prior shooting had any probative value, I think it

was patently improper to admit the evidence and thereby submit the defendant to the above-discussed danger of prejudice. While it may be argued that the danger of prejudice may have been speculative, this danger, in my judgment, outweighed the nonexistent probative value of the prior shooting.

It is possible—but this, too, is only speculation—that the State, on appeal or at trial, could have developed a more viable argument that the prior shooting had probative value in proving intent or absence of mistake. However, the argument presented by the State fails to persuade me that there was any probative value in the fact of the prior shooting. Accordingly, I would have reversed.